UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL P. KEARNS, in his individual capacity and
official capacity as Clerk of the County of Erie, New York,

                    Plaintiff,              No. 1:19-cv-00902-EAW

vs.

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York,
LETITIA A. JAMES, in her official capacity as
Attorney General of the State of New York, and
MARK J.F. SCHROEDER, in his official capacity as
Commissioner of the New York State Department of
Motor Vehicles,

                    Defendants.

_____

## FIRST AMENDED COMPLAINT

        Plaintiff Michael P. Kearns, in his individual capacity and in his official capacity as Clerk of the County of Erie, New York, by and through his attorneys, MICHAEL A. SIRAGUSA, ESQ., Erie County Attorney, Thomas J. Navarro, Esq., Assistant County Attorney, of Counsel, for his Complaint, alleges:

### Introduction

        1.      The New York State Legislature recently passed a statute known as the "Green Light Law."  This law allows individuals illegally in the United States to apply for and receive drivers' licenses, and generally prohibits state officials from disclosing those applicants' records to immigration authorities.  The Green Light Law conflicts with federal immigration law,

thereby violating the United States Constitution.  And it puts Michael P. Kearns in an impossible

position.  If he implements the Green Light Law, he risks prosecution under a federal statute that

makes it a crime to conceal, harbor, or shield from detection an individual illegally in the United

States.  If he fails to implement the Green Light Law, he risks retaliation by Defendants,

including removal from office.  Something must give.

2.      The Green Light Law conflicts with federal immigration law.  The

Supremacy Clause of the United States Constitution resolves the conflict in favor of federal law,

rendering the Green Light Law unconstitutional.  Yet the New York State Governor, Attorney

General, and Commissioner of the Department of Motor Vehicles require Mr. Kearns to carry

out the unconstitutional Green Light Law.  By doing so, they are violating the Supremacy

Clause.  Mr. Kearns, therefore, seeks a declaration that the Green Light Law is unconstitutional

and a permanent injunction prohibiting the Governor, Attorney General, and DMV

Commissioner from: (a) requiring Mr. Kearns to follow the Green Light Law; and (b) removing

Mr. Kearns from office, or utilizing any other enforcement mechanism, for failing to follow the

Green Light Law.

## The Parties

3.      Plaintiff Michael P. Kearns is the duly elected Clerk of the County of Erie,

New York and a resident of the City of Buffalo and the County of Erie, New York.

4.      Defendant Andrew M. Cuomo is the Governor of the State of New York

and, upon information and belief, is a resident of the Town of New Castle and the County of

Westchester, New York.

5.      Defendant Letitia A. James is the Attorney General of the State of New York and, upon information and belief, is a resident of the City of New York and the County of Kings, New York.

6.      Defendant Mark J.F. Schroeder is the Commissioner of the New York Department of Motor Vehicles and, upon information and belief, is a resident of the City of Buffalo and the County of Erie, New York.

## Jurisdiction and Venue

7.      The Court has federal-question jurisdiction under 28 U.S.C. § 1331, as this suit alleges a violation of the Supremacy Clause of the United States Constitution, which requires the preemption of a New York State statute based on its conflict with federal immigration law.

8.      Under 28 U.S.C. § 1391, venue is proper in the Western District of New York because Defendant Schroeder resides within this judicial district and both he and Defendants Cuomo and James are residents of New York State, and because it is where a substantial part of the events giving rise to the claim have occurred.

9.      Mr. Kearns has the capacity to bring his claims against Defendants Cuomo, James, and Schroeder because his compliance with a New York State statute forces him to violate the proscription of the United States Constitution's Supremacy Clause against the application of state laws that conflict with federal law.  He also brings this action in his individual capacity.

10.    As a result of this conflict, Mr. Kearns faces the threat of prosecution and removal from office.

11.    The service of this suit upon Defendant James complies with and satisfies the notice requirement to the New York State Attorney General under N.Y. Exec. Law § 71(1).

## Nature of the Case

**A.    Powers and Duties of the Clerk and the Defendants.**

12.    As Clerk of the County of Erie, Mr. Kearns administers myriad public services, including the recording of real-property records, the filing and maintenance of court actions and records, and the issuance of certain permits.

13.    Under section 205(1) of New York Vehicle and Traffic Law, he also must act as the agent of the Commissioner of the New York State Department of Motor Vehicles to issue vehicle registrations, license plates, and driver's licenses.  These provisions are mandatory "unless and until the commissioner . . . otherwise direct[s]" the County of Erie.

14.    Commissioner Schroeder has not directed the County to withhold driver's licenses.  Instead, he publicly vowed to enforce the Green Light Law "to the letter of the law," even in the face of pushback from County Clerks such as Mr. Kearns.[1]

---

[1]     *See* Ryan Whalen, *Schroeder Talks Drivers' Licenses For Undocumented Immigrants and More In One-On-One Interview*, SPECTRUM NEWS, Jan. 11, 2019, *available at* https://spectrumlocalnews.com/nys/buffalo/politics/2019/01/12/schroeder-dmv-commissioner (last visited July 8, 2019) ("If the law is passed, he says he will enforce it as commissioner.  He acknowledged there may be pushback from county clerks and urged them to voice their concerns to legislators in the coming weeks."); *Cuomo's DMV Nominee Says He Backs Driver's Licenses For Undocumented Immigrants*, STATE OF POLITICS, SPECTRUM NEWS, undated, *available at* https://www.nystateofpolitics.com/2019/01/cuomos-dmv-nominee-says-he-backs-drivers-licenses-for-undocumented-immigrants/ (last visited July 8, 2019) ("Once the policymakers have their say and if they

15.     Governor Cuomo also has the power to enforce the Green Light Law by removing from office any County Clerk who declines to carry out its requirements.

16.     Under Article 13, Section 13(a) of the New York State Constitution: "[t]he governor may remove any elective sheriff, county clerk, district attorney or register within the term for which he or she shall have been elected; but before so doing the governor shall give to such officer a copy of the charges against him or her and an opportunity of being heard in his or her defense."

17.     The New York State Attorney General is required to prosecute any action or proceeding related to such removal.  *See* N.Y. Executive Law § 63(1) ("The attorney-general shall . . . Prosecute and defend all actions and proceedings in which the state is interested . . . .").

18.     Governor Cuomo has publicly refused to assure County Clerks that he would not remove them from office if they decline to follow the Green Light Law.[2]

19.     The Governor also requested that the courts decide the Green Light Law's constitutionality.[3]

---

pass a joint a bill and the governor signs it, I will fully implement what the legislation says and what the letter of the law is," said Mark Schroeder, the departing Buffalo city comptroller who was nominated this week to become the DMV commissioner. "That's what I'll do.").

[2]     *See* Marian Hetherly & Mark Wozniak, *Governor Cuomo talks post-legislative session*, WBFO, June 25, 2019, *available at* https://news.wbfo.org/post/governor-cuomo-talks-post-legislative-session (last visited July 8, 2019) ("Gov. Andrew Cuomo is non-committal when it comes to removing county clerks from office if they refuse to enforce the newly passed Green Light law.  He, instead, is looking forward to its day in court."); Dave Rowley, *Cuomo calls legislative session most productive session*, CHAUTAUQUA TODAY, June 21, 2019, *available at* https://chautauquatoday.com/news/details.cfm?clientid=25&id=286451#.XR9D6ehKjD4 (last visited July 8, 2019) ("Cuomo dodged the issue of whether he would remove any county clerks that would not comply with the new Green Light Law.  He does expect a legal challenge.[]"  Cuomo said:  "They are going to start a lawsuit and say 'I want a legal resolution first.  And this is going to be a difficult legal question.").

[3]     *Id.*

20.     The New York State Attorney General has the power to bring an action against a public officer who has committed "an act which by law works a forfeiture of his office."  *See* N.Y. Executive Law § 63-a.

21.     Attorney General James has pledged to "vigorously defend" the Green Light Law's constitutionality, if challenged in court, adding:  "[n]o one is above the law."[4]

22.     In addition, if Mr. Kearns carries out his duties under the Green Light Law, in conflict with and violation of federal immigration law, he faces the credible threat of federal prosecution.

23.     The Trump Administration has already threatened retaliation against local officials that it believes are interfering with the enforcement of federal immigration law.  For example, in 2018, President Trump urged the United States Attorney General to consider prosecuting the Mayor of Oakland, California for obstruction of justice.  This threat of prosecution came after the Mayor alerted individuals who were illegally in the United States of a pending raid by federal law enforcement.[5]

---

[4]     *See* Karen DeWitt, *NY Gov. Cuomo Signs Green Light Bill*, WAMC, June 17, 2019, *available a*t https://www.wamc.org/post/ny-gov-cuomo-signs-green-light-bill (last visited July 8, 2019) ("If this bill is enacted and challenged in court, we will vigorously defend it," James said. "I support the Green Light bill, and the Office of Attorney General has concluded that it is constitutional."); Chris McKenna, *Rabbitt, other state clerks urge Trump to review Green Light law*, TIMES HERALD-RECORD, June 28, 2019, *available at* https://www.recordonline.com/news/20190628/rabbitt-other-state-clerks-urge-trump-to-review-green-light-law (last visited July 8, 2019) ("If this law is challenged in court, I will vigorously defend it as the state's attorney and chief law enforcement officer. No one is above the law.").

[5]     *See* Marian Hetherly & Mark Wozniak, *Trump asks Sessions to consider prosecuting Oakland mayor over ICE raid*, POLITICO, May 16, 2018, *available at* https://www.politico.com/story/2018/05/16/trump-sessions-oakland-mayor-prosecution-sanctuary-cities-594470 (last visited July 8, 2019).

24.     As set forth in more detail below, the Green Light Law includes, among other things, a comparable requirement to promptly notify individuals with a New York State driver's license whose records are requested by an agency that enforces federal immigration law.

**B.      New York State Adopts the Green Light Law.**

25.     Until recently, Section 502 of the New York Vehicle and Traffic Law required an applicant for a driver's license to provide his or her Social Security number, except for certain exceptions applicable to legal residents who were not eligible for a Social Security number.

26.     On June 17, 2019, New York Governor Andrew Cuomo signed the Driver's License Access and Privacy Act, also known as the "Green Light Law" (Bill Nos. A3675-B, S1747-B), which amends numerous provisions of the New York Vehicle and Traffic Law, including Section 502.  A copy of the Green Light Law (S1747-B) is attached to this Complaint as **Exhibit A**.

27.     Under the Green Light Law, an applicant for a driver's license no longer must provide a Social Security number.  In lieu of a Social Security number, the applicant may submit:

> . . . with respect to an application for a non-commercial driver's
> license or learner's permit which does not meet federal standards
> for identification, an affidavit signed by such applicant that they
> have not been issued a social security number.

28.     Likewise, applicants for such a license or permit (or its renewal) "shall not be required to prove that they are lawfully present in the United States."

29.     This amendment allows individuals illegally in the United States to apply for and obtain a New York State non-commercial driver's license or learner's permit.

30.     As Governor Cuomo explained, the Green Light Law was intended to "create a driver's license for undocumented people."[6]

31.     Additionally, under the Green Light Law, the DMV Commissioner, his employees, or his agents cannot disclose applicants' records to any agency that primarily enforces immigration law, unless the agency provides a warrant or court order signed by a federal judge.  Upon such a disclosure, the DMV Commissioner must notify within three days the individual whose records were requested.

32.     The DMV Commissioner must also require any person or entity that receives or has access to applicants' records to certify that the records will not be used for civil immigration purposes, and will not be disclosed to an agency that primarily enforces immigration law unless the records are disclosed under a cooperative arrangement—between city, state, and federal agencies—that is not for the purpose of enforcing immigration law.

33.     Additionally, under the Green Light Law, the DMV Commissioner (or his agent) cannot disclose any portion of any record that identifies whether the type of driver's license or learner's permit a person holds meets—or does not meet—federal standards for identification, except to the person who is the subject of the record, where expressly required

---

[6]     *See* Denis Slattery, *Cuomo signs bill granting undocumented immigrants access to New York driver's licenses despite 11th-hour concerns*, NY DAILY NEWS, June 17, 2019, *available at* https://www.nydailynews.com/news/politics/ny-senate-approves-undocumented-immigrants-access-to-drivers-licenses-20190618-eu2gx3xvunetpnifuifjbsvn54-story.html (last visited July 8, 2019) ("You create a driver's license for undocumented people, you just have to make sure you do it in a way that the feds don't come in the next day and access that database with the exact opposite intention," Cuomo told WAMC.").

pursuant 49 U.S.C. Chapter 303 (part A, subtitle vi), or unless necessary to comply with a lawful

court order, judicial warrant signed by a federal judge, or subpoena for individual records

properly issued pursuant to the New York C.P.L.R.

34.     In other words, the Green Light Law requires agents of the DMV

Commissioner, such as Mr. Kearns and his staff, to knowingly conceal and shield information

and records containing evidence of illegal immigration activity from the detection of federal

immigration authorities.  In recent years, Erie County—which is a border community—has seen

an increased concentration of immigrants.  It is not unusual for driver's license applicants—

without being asked—to provide Mr. Kearns and his staff with information or records regarding

their immigration status.  This is because the applicants are uncertain about the type of driver's

license or learner's permit for which they are eligible or about the type of records they must

provide to obtain a driver's license or permit.  Therefore, it is not unusual for Mr. Kearns and his

staff to have actual knowledge of an applicant's immigration status, irrespective of whether they

ask about it.

35.     Issuing driver's licenses to individuals illegally in the United States will,

among other things, allow the individuals to more easily evade detection by federal law

enforcement.

**C.     The Conflict with Federal Immigration Law.**

36.     Under federal immigration law (8 U.S.C. § 1324), it is a felony for any

person, "knowing or in reckless disregard of the fact that an alien has come to, entered, or

remains in the United States in violation of law," to "conceal[ ], harbor[ ], or shield[ ] from detection . . . such alien in any place."[7]

37.     It also is a felony to attempt these acts, to aid or abet their commission, or to conspire to commit them.[8]

38.     As the Fifth Circuit Court of Appeals has explained, "[i]n enacting this provision, Congress 'intended to broadly proscribe any knowing or willful conduct fairly within any of these terms that tends to substantially facilitate an alien's remaining in the United States illegally . . . .'"[9]

39.     The Second Circuit takes a similarly broad view of 8 U.S.C. § 1324.[10]

40.     In addition to this criminal statute, Congress has passed other comprehensive immigration legislation that the Green Light Law would frustrate.

41.     The Immigration and Reform Control Act of 1986 (IRCA) "makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers . . . ."[11] The purpose of the IRCA is to "combat the employment of illegal aliens."[12]

---

[7]     *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 529 (5th Cir. 2013) (quoting 8 U.S.C. § 1324(a)(1)(A)(iii)).

[8]     8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I)-(II).

[9]     *Villas at Parkside Partners*, 726 F.3d at 529 (quoting *United States v. Rubio–Gonzalez*, 674 F.2d 1067, 1073 n.5 (5th Cir. 1982)).

[10]     *See, e.g.*, *United States v. George*, 779 F.3d 113, 118 (2d Cir. 2015); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013).

[11]     *Id.* (citing 8 U.S.C. § 1324a).

[12]     *Arizona v. United States*, 567 U.S. 387, 404 (2012) (citing *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147 (2002)).

42.     By providing driver's licenses to individuals illegally in the United States, and by prohibiting the disclosure of their records, the Green Light Law shields these individuals from detection and substantially facilitates their effort to remain in the United States.

43.     The Green Light Law directly conflicts with 8 U.S.C. § 1324.  It also conflicts with other federal statutes, including but not limited to 8 U.S.C. §§ 1373 and 1644, which prohibit state and local governments from prohibiting, or in any way restricting, their employees from "sending to, or receiving from, [federal officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

44.     The Green Light Law places County Clerks such as Mr. Kearns, who are required under New York law to carry out its mandates, at risk of federal prosecution under 8 U.S.C. § 1324.

45.     The Green Light Law also frustrates Congress's goal in passing the IRCA, which is to prohibit the employment of individuals illegally in the United States.

46.     Indeed, the intent of the Green Light Law is to undermine the IRCA's purpose and objectives.

47.     According to its sponsors and supporters, the Green Light Law allows individuals illegally in the United States to "get to and from work" and "ensure that our industries have the labor they need to keep our economy moving."[13]

---

[13]     *See Assembly Passes Driver's License Access and Privacy Act #GreenLightNY*, NEWS RELEASE OF ASSEMBLY SPEAKER CARL E. HEASTIE, June 12, 2019, available at https://nyassembly.gov/Press/files/20190612.php (last visited July 8, 2019) (Assemblyman Marcos A. Crespo:  "This legislation allows for undocumented immigrant New Yorkers, who contribute to our state economy in so many ways, to drive safely to and from school, work, and home . . . ."); (Speaker Heastie:

48.     The Office of the New York State Assembly Speaker stated that the Green Light Law "would make everyday tasks such as getting to work, shopping for groceries or picking up kids from school vastly easier for an estimated 265,000 people in New York, including 64,000 north of New York City."[14]

49.     Issuing driver's licenses to individuals illegally in the United States will, among other things, allow the individuals to more easily gain and maintain employment.

50.     Appearing to acknowledge these conflicts, Governor Cuomo conceded that the constitutionality of the Green Light Law "is going to be a difficult legal question."[15]

### First Cause of Action — Declaratory Judgment

51.     Mr. Kearns repeats and realleges each allegation in the preceding paragraphs.

52.     There is a justiciable controversy between the parties.

53.     Under the Supremacy Clause of the United States Constitution, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[16]

---

"The legislation passed today will promote public safety, protect our state's economy and ensure every New Yorker can integrate into their community and care for their family.  Making sure that every driver is trained, tested and insured will make New York's roads safer for everyone and ensure that our industries have the labor they need to keep our economy moving.").

[14]     *Id.*

[15]     *See* Dave Rowley, *Cuomo calls legislative session most productive session*, CHAUTAUQUA TODAY, June 21, 2019, *available at* https://chautauquatoday.com/news/details.cfm?clientid=25&id=286451#.XR9D6ehKjD4 (last visited July 8, 2019) (audio recording No. 2).

[16]     U.S. Const. art. VI, cl. 2.

54.     The Supremacy Clause requires the preemption of state law that conflicts with federal law.

55.     When it is impossible to comply with both state and federal law, a conflict exists.

56.     In addition, the Supremacy Clause requires the preemption of state laws that regulate a field that Congress has determined to be within its exclusive governance.

57.     Congress has broad power over naturalization and immigration.[17]

58.     Indeed, the power to regulate immigration is an exclusively federal power.

59.     The Green Light Law conflicts with the federal prohibition against concealing, harboring, or shielding from detection individuals illegally in the United States.

60.     The Green Light Law also conflicts with, and stands as an obstacle to the accomplishment and execution of, the purpose and objectives of the IRCA—namely, prohibiting the employment of individuals illegally in the United States.

61.     The Green Light Law also regulates a field that Congress has determined to be within its exclusive governance.

62.     As Clerk of the County of Erie, Mr. Kearns is required to carry out the Green Light Law.

---

[17]     *Demore v. Kim*, 538 U.S. 510, 521 (2003).

63.     If he fails to do so, he is at risk of enforcement or removal from office, or both, by Governor Cuomo, Attorney General James, and/or Commissioner Schroeder.

64.     But if Mr. Kearns carries out his duties under the Green Light Law, he faces the credible threat of criminal prosecution by federal authorities.

65.     Mr. Kearns, therefore, cannot carry out his duties under New York law without violating federal immigration law, and vice versa.

66.     Under 28 U.S.C. §§ 2201 and 2202, Mr. Kearns is entitled to a judgment declaring that:

a)     The portions of the Green Light Law amending Section 502 of the New York Vehicle and Traffic Law removing the requirement for a driver's license applicant to provide his/her Social Security number and allowing individuals illegally in the United States to obtain a driver's license, conflict with federal law and are, therefore, preempted under the Supremacy Clause of the United States Constitution;

b)     The portions of the Green Light Law amending Section 201 of the New York Vehicle and Traffic Law to prohibit the disclosure (and require the concealment) of any portion of any record of a driver's license applicant (for a license that does not meet federal identification standards) absent a warrant or court order signed by a federal judge, conflict with federal law and are, therefore,

preempted under the Supremacy Clause of the United States
Constitution;

c)      The portions of the Green Light Law amending Section 201 of the
        New York Vehicle and Traffic Law to require anyone with access
        to the Department of Motor Vehicles' records to certify that they
        will not use the records for civil immigration purposes or disclose
        them to an agency that primarily enforces immigration law unless
        such disclosure is pursuant to a cooperative arrangement between
        city, state, and federal agencies, conflict with federal law and are,
        therefore, preempted under the Supremacy Clause of the United
        States Constitution;

d)      The portion of the Green Light Law amending Section 201 of the
        New York Vehicle and Traffic Law to require the DMV
        Commissioner (or his agent) to notify within three days the
        individual whose records were requested by an agency that
        primarily enforces immigration law, conflicts with federal law and
        is, therefore, preempted under the Supremacy Clause of the United
        States Constitution;

e)      The portion of the Green Light Law amending Section 201 of the
        New York Vehicle and Traffic Law prohibiting the disclosure of
        any portion of any record that identifies whether the type of
        driver's license or learner's permit a person holds meets—or does

not meet—federal standards for identification, conflicts with
federal law and is, therefore, preempted under the Supremacy
Clause of the United States Constitution;

f)  The Green Light Law conflicts with and stands as an obstacle to
the accomplishment and execution of the purpose and objectives of
the IRCA (8 U.S.C. § 1324a) to combat the employment of illegal
aliens and is, therefore, preempted under the Supremacy Clause of
the United States Constitution;

g)  The Green Light Law conflicts with and stands as an obstacle to
the accomplishment and execution of the purpose and objectives of
8 U.S.C. §§ 1373 and 1644 and is, therefore, preempted under the
Supremacy Clause of the United States Constitution;

h)  The Green Light Law regulates a field that Congress has
determined to be within its exclusive governance and is, therefore,
preempted under the Supremacy Clause of the United States
Constitution; and

i)  The Green Light Law is unconstitutional and unenforceable.

### Second Cause of Action — Injunction

67.  Mr. Kearns repeats and realleges each allegation in the preceding
paragraphs.

68.     As demonstrated above, Mr. Kearns will be successful on the merits of his preemption claim.

69.     Mr. Kearns will be irreparably harmed without an order permanently enjoining Defendants from implementing and enforcing any and all unconstitutional provisions of the Green Light Law, and from removing Mr. Kearns from office for his failure to carry out any and all unconstitutional requirements of the Green Light Law.

70.     As demonstrated above, Mr. Kearns faces a credible threat of federal prosecution if he carries out the Green Light Law, and a credible threat of enforcement and removal from office if he fails to do so.

71.     The injunctive relief sought will not adversely affect the public interest. To the contrary, granting injunctive relief serves the public interest as it removes the conflict with federal immigration law under the Green Light Law.

72.     The balance of equities and the public interest weigh in favor of preventing the violation of federal immigration law.

73.     Mr. Kearns has no adequate remedy at law.

74.     Defendants will suffer no harm or prejudice from the issuance of an injunction.

WHEREFORE, Michael P. Kearns respectfully demands judgment against Defendants for the following relief:

1)     an order declaring:

a)      The portions of the Green Light Law amending Section 502 of the

New York Vehicle and Traffic Law removing the requirement for

a driver's license applicant to provide his/her Social Security

number and allowing individuals illegally in the United States to

obtain a driver's license, conflict with federal law and are,

therefore, preempted under the Supremacy Clause of the United

States Constitution;

b)      The portions of the Green Light Law amending Section 201 of the

New York Vehicle and Traffic Law to prohibit the disclosure (and

require the concealment) of any portion of any record of a driver's

license applicant (for a license that does not meet federal

identification standards) absent a warrant or court order signed by

a federal judge, conflict with federal law and are, therefore,

preempted under the Supremacy Clause of the United States

Constitution;

c)      The portions of the Green Light Law amending Section 201 of the

New York Vehicle and Traffic Law to require anyone with access

to the Department of Motor Vehicles' records to certify that they

will not use the records for civil immigration purposes or disclose

them to an agency that primarily enforces immigration law unless

such disclosure is pursuant to a cooperative arrangement between

city, state, and federal agencies, conflict with federal law and are,

therefore, preempted under the Supremacy Clause of the United
States Constitution;

d)      The portion of the Green Light Law amending Section 201 of the
New York Vehicle and Traffic Law requiring the DMV
Commissioner (or his agent) to notify within three days the
individual whose records were requested by an agency that
primarily enforces immigration law, conflicts with federal law and
is, therefore, preempted under the Supremacy Clause of the United
States Constitution;

e)      The portion of the Green Light Law amending Section 201 of the
New York Vehicle and Traffic Law prohibiting the disclosure of
any portion of any record that identifies whether the type of
driver's license or learner's permit a person holds meets—or does
not meet—federal standards for identification, conflicts with
federal law and is, therefore, preempted under the Supremacy
Clause of the United States Constitution;

f)      The Green Light Law conflicts with and stands as an obstacle to
the accomplishment and execution of the purpose and objectives of
the IRCA (8 U.S.C. § 1324a) to combat the employment of illegal
aliens and is, therefore, preempted under the Supremacy Clause of
the United States Constitution;

g) The Green Light Law conflicts with and stands as an obstacle to the accomplishment and execution of the purpose and objectives of 8 U.S.C. §§ 1373 and 1644 and is, therefore, preempted under the Supremacy Clause of the United States Constitution;

h) The Green Light Law regulates a field that Congress has determined to be within its exclusive governance and is, therefore, preempted under the Supremacy Clause of the United States Constitution; and

i) The Green Light Law is unconstitutional and unenforceable;

2) an injunction permanently enjoining Defendants from implementing and enforcing any and all unconstitutional provisions of the Green Light Law, and from removing Mr. Kearns from office for his failure to carry out any and all unconstitutional requirements of the Green Light Law; and

3) such other relief as the Court deems just and proper.

Dated: Buffalo, New York
August 30, 2019

MICHAEL A. SIRAGUSA
Erie County Attorney and Attorney for Plaintiff
Michael P. Kearns in his official capacity as
Clerk of the County of Erie, New York

By:  s/ Kenneth R. Kirby
KENNETH R. KIRBY, ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2208
Email: kenneth.kirby@erie.gov

By:   s/ Thomas J. Navarro, Jr.
THOMAS J. NAVARRO, JR. ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
(716) 858-2208
Email: thomas.navarro@erie.gov

# EXHIBIT A

# STATE OF NEW YORK

---

1747--B

2019-2020 Regular Sessions

# IN SENATE

January 16, 2019

———————

Introduced by Sens. SEPULVEDA, BAILEY, BENJAMIN, BIAGGI, CARLUCCI, COMRIE, GIANARIS, GOUNARDES, HARCKHAM, HOYLMAN, JACKSON, KAVANAGH, KRUEGER, LIU, MAY, MAYER, MONTGOMERY, MYRIE, PARKER, RAMOS, RIVERA, SALAZAR, SANDERS, SERRANO, STAVISKY -- read twice and ordered printed, and when printed to be committed to the Committee on Transportation -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee -- committee discharged, bill amended, ordered reprinted as amended and recommitted to said committee

AN ACT to amend the vehicle and traffic law, in relation to the issuance of non-commercial drivers' licenses and learners' permits; and to repeal certain provisions of such law relating to driver's license applications

  *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

1    Section 1. This act shall be known and may be cited as the "driver's
2  license access and privacy act".
3    § 2. Section 201 of the vehicle and traffic law is amended by adding
4  five new subdivisions 8, 9, 10, 11, and 12 to read as follows:
5    *8. Any portion of any record retained by the commissioner in relation*
6  *to a non-commercial driver's license or learner's permit application or*
7  *renewal application that contains the photo image or identifies the*
8  *social security number, telephone number, place of birth, country of*
9  *origin, place of employment, school or educational institution attended,*
10 *source of income, status as a recipient of public benefits, the customer*
11 *identification number associated with a public utilities account,*
12 *medical information or disability information of the holder of, or*
13 *applicant for, such license or permit is not a public record and shall*
14 *not be disclosed in response to any request for records except: (a) to*
15 *the person who is the subject of such records; or (b) where expressly*
16 *required pursuant to chapter three hundred three of part A of subtitle*
17 *vi of title forty-nine of the United States code; or (c) where necessary*

EXPLANATION--Matter in *italics* (underscored) is new; matter in brackets [-] is old law to be omitted.

LBD05648-07-9

1  to comply with a lawful court order, judicial warrant signed by a judge
2  appointed pursuant to article III of the United States constitution, or
3  subpoena for individual records issued pursuant to the criminal proce-
4  dure law or the civil practice law and rules.
5      9. The commissioner shall not disclose or otherwise make accessible
6  original documents or copies of documents collected from non-commercial
7  driver's license or learner's permit applicants or renewal applicants to
8  prove identity, age, or fitness except: (a) to the person who is the
9  subject of such documents; or (b) where expressly required pursuant to
10 chapter three hundred three of part A of subtitle vi of title forty-nine
11 of the United States code; or (c) unless necessary to comply with a
12 lawful court order, judicial warrant signed by a judge appointed pursu-
13 ant to article III of the United States constitution, or subpoena for
14 individual records properly issued pursuant to the criminal procedure
15 law or the civil practice law and rules.
16     10. The commissioner shall not disclose or otherwise make accessible
17 any portion of any record that identifies whether the type of driver's
18 license or learner's permit that a person holds either meets federal
19 standards for identification or does not meet federal standards for
20 identification except: (a) to the person who is the subject of such
21 record; or (b) where expressly required pursuant to chapter three
22 hundred three of part A of subtitle vi of title forty-nine of the United
23 States code; or (c) unless necessary to comply with a lawful court
24 order, judicial warrant signed by a judge appointed pursuant to article
25 III of the United States constitution, or subpoena for individual
26 records properly issued pursuant to the criminal procedure law or the
27 civil practice law and rules.
28     11. For the purposes of this section, whenever a lawful court order,
29 judicial warrant, or subpoena for individual records properly issued
30 pursuant to the criminal procedure law or the civil practice law and
31 rules is presented to the commissioner, only those records, documents,
32 or information specifically sought by such court order, warrant, or
33 subpoena may be disclosed.
34     12. (a) Except as required for the commissioner to issue or renew a
35 driver's license or learner's permit that meets federal standards for
36 identification, the commissioner, and any agent or employee of the
37 commissioner, shall not disclose or make accessible in any manner
38 records or information that he or she maintains, to any agency that
39 primarily enforces immigration law or to any employee or agent of such
40 agency, unless the commissioner is presented with a lawful court order
41 or judicial warrant signed by a judge appointed pursuant to article III
42 of the United States constitution. Upon receiving a request for such
43 records or information from an agency that primarily enforces immi-
44 gration law, the commissioner shall, no later than three days after such
45 request, notify the individual about whom such information was
46 requested, informing such individual of the request and the identity of
47 the agency that made such request.
48     (b) The commissioner shall require any person or entity that receives
49 or has access to records or information from the department to certify
50 to the commissioner, before such receipt or access, that such person or
51 entity shall not (i) use such records or information for civil immi-
52 gration purposes or (ii) disclose such records or information to any
53 agency that primarily enforces immigration law or to any employee or
54 agent of any such agency unless such disclosure is pursuant to a cooper-
55 ative arrangement between city, state and federal agencies which
56 arrangement does not enforce immigration law and which disclosure is

1  limited to the specific records or information being sought pursuant to
2  such arrangement. In addition to any records required to be kept pursu-
3  ant to subdivision (c) of section 2721 of title 18 of the United States
4  code, any person or entity certifying pursuant to this paragraph shall
5  keep for a period of five years records of all uses and identifying each
6  person or entity that primarily enforces immigration law that received
7  department records or information from such certifying person or entity.
8  Such records shall be maintained in a manner and form prescribed by the
9  commissioner and shall be available for inspection by the commissioner
10 or his or her designee upon his or her request.
11    (c) For purposes of this subdivision, the term "agency that primarily
12 enforces immigration law" shall include, but not be limited to, United
13 States immigration and customs enforcement and United States customs and
14 border protection, and any successor agencies having similar duties.
15    § 3.  Subdivision 1 of section 502 of the vehicle and traffic law, as
16 amended by chapter 465 of the laws of 2012, the third undesignated para-
17 graph as amended by chapter 248 of the laws of 2016, is amended to  read
18 as follows:
19    1.  Application  for license. Application for a driver's license shall
20 be made to the commissioner. The fee prescribed by law may be  submitted
21 with such application. The applicant shall furnish such proof of identi-
22 ty, age, and fitness as  may be required by the commissioner. With
23 respect to a non-commercial driver's license or learner's permit which
24 does not meet federal standards for identification, in addition to the
25 acceptable proofs of age and identity approved by the commissioner as of
26 January first, two thousand nineteen, acceptable proof of identity shall
27 also include, but not be limited to, a valid, unexpired foreign passport
28 issued by the applicant's country of citizenship (which shall also be
29 eligible as proof of age), a valid, unexpired consular identification
30 document issued by a consulate from the applicant's country of citizen-
31 ship, or a valid foreign driver's license that includes a photo image of
32 the applicant and which is unexpired or expired for less than twenty-
33 four months of its date of expiration, as primary forms of such proof.
34 Nothing contained in this subdivision shall be deemed to preclude the
35 commissioner from approving additional proofs of identity and age. The
36 commissioner  may  also  provide  that  the  application procedure shall
37 include  the  taking of a photo  image  or  images  of  the  applicant in
38 accordance with rules and regulations prescribed by the commissioner. In
39 addition, the commissioner also shall require that the applicant provide
40 his  or  her  social  security  number  [and]  or, in lieu thereof, with
41 respect to an application for a non-commercial driver's license or
42 learner's permit which does not meet federal standards for identifica-
43 tion, an affidavit signed by such applicant that they have not been
44 issued a social security number. The commissioner also shall provide
45 space on the application so that the applicant may register in  the  New
46 York  state  organ  and  tissue donor registry under section forty-three
47 hundred ten of the public health law with the following  stated  on  the
48 application in clear and conspicuous type:
49    "You  must  fill out the following section: Would you like to be added
50 to the Donate Life Registry? Check box for 'yes'  or  'skip  this  ques-
51 tion'."
52    The  commissioner  of  health shall not maintain records of any person
53 who checks "skip this question". Except where the application is made in
54 person or electronically, failure to check a box shall  not  impair  the
55 validity of an application, and failure to check "yes" or checking "skip
56 this  question"  shall not be construed to imply a wish not to donate. In

1  the case of an applicant under eighteen years  of  age,  checking  "yes"
2  shall  not  constitute consent to make an anatomical gift or registration
3  in the donate life registry, except as otherwise  provided  pursuant  to
4  the  provisions  of  paragraph  (b) of subdivision one of section forty-
5  three hundred one of the public health law. Where  an  applicant  has
6  previously  consented  to  make  an anatomical gift or registered in the
7  donate life registry, checking "skip this question" or failing to  check
8  a  box  shall  not  impair that consent or registration. In addition, an
9  applicant for a commercial driver's license who will operate  a  commer-
10 cial motor vehicle in interstate commerce shall certify that such appli-
11 cant  meets  the  requirements to operate a commercial motor vehicle, as
12 set forth in public law 99-570, title XII, and title 49 of the  code  of
13 federal  regulations,  and  all  regulations  promulgated by the United
14 States secretary of transportation under the hazardous materials  trans-
15 portation act.  In  addition,  an  applicant  for a commercial driver's
16 license shall submit a medical certificate at such intervals as required
17 by the federal motor carrier safety improvement act of  1999  and  Part
18 383.71(h)  of  title  49  of the code of federal regulations relating to
19 medical certification and in a manner prescribed  by  the  commissioner.
20 For  purposes  of  this  section  and  sections five hundred three, five
21 hundred ten-a, and five hundred ten-aa of this title, the terms "medical
22 certificate" and "medical certification" shall mean a form substantially
23 in compliance with the form set forth in Part 391.43(h) of title  49  of
24 the  code of federal regulations. Upon a determination that the holder of
25 a commercial driver's license has made any false statement, with respect
26 to  the application for such license, the commissioner shall revoke such
27 license.
28   § 4. Paragraph (a) of subdivision 6 of section 502 of the vehicle  and
29 traffic  law, as amended by section 3 of part K of chapter 59 of the laws
30 of 2009, is amended to read as follows:
31   (a)  A  license  issued  pursuant  to subdivision five of this section
32 shall be valid until the expiration date contained thereon, unless  such
33 license  is  suspended, revoked or cancelled. Such license may be renewed
34 by submission of an application for renewal, the fee prescribed by  law,
35 proofs  of  prior  licensing, fitness and acceptable vision prescribed by
36 the commissioner, the applicant's social security number **or, in  lieu**
37 **thereof, with respect to an application for a non-commercial driver's**
38 **license or learner's permit which does not meet federal standards for**
39 **identification, an affidavit signed by such applicant that they have not**
40 **been issued a social security number**, and if required by the commission-
41 er**,**  a  photo  image  of  the  applicant in such numbers and form as the
42 commissioner shall prescribe.  In addition, an applicant for renewal  of
43 a  license  containing  a  hazardous  material endorsement shall pass an
44 examination to retain such endorsement.  The  commissioner  shall,  with
45 respect to the renewal of a hazardous materials endorsement, comply with
46 the  requirements  imposed upon states by sections 383.141 and 1572.13 of
47 title 49 of the code of federal regulations. A renewal of  such  license
48 shall  be  issued by the commissioner upon approval of such application,
49 except that no such license shall be issued if  its  issuance  would  be
50 inconsistent with the provisions of section five hundred sixteen of this
51 title, and except that the commissioner may refuse to renew such license
52 if the applicant is the holder of a currently valid or renewable license
53 to drive issued by another state or foreign country unless the applicant
54 surrenders such license.
55   § 5.  Subdivision  7 of section 502 of the vehicle and traffic law is
56 REPEALED and two new subdivisions 7 and 8 are added to read as follows:

1  7. Selective service act. The commissioner shall provide separate
2  space on the application for a learner's permit, driver's license, non-
3  driver identification card, or renewal thereof so that any person who is
4  at least eighteen years of age but less than twenty-six years of age who
5  applies to the commissioner for such permit, license, or card or renewal
6  thereof may opt to register with the selective service in accordance
7  with 50 U.S.C. App 451 et. seq., as amended, if such person is subject
8  to such act, and consent to have the commissioner forward the necessary
9  personal information in accordance with this subdivision. Such consent
10  shall be separate from any other certification or signature on such
11  application. The commissioner shall include on the application a brief
12  statement about the requirement of the law, a citation of the act, and
13  the consequences for failing to meet the same. The commissioner shall
14  forward to the selective service system, in an electronic format, the
15  necessary personal information required for registration only of indi-
16  viduals who have affirmatively opted and consented, pursuant to this
17  subdivision, to authorize the commissioner to forward such information
18  to the selective service system.
19  8. Non-commercial drivers' licenses and learners' permits which do not
20  meet federal standards for identification. (a) Non-commercial drivers'
21  licenses and learners' permits which do not meet federal standards for
22  identification shall be issued in such form as the commissioner shall
23  determine, provided that such licenses and permits shall be visually
24  identical to non-commercial drivers' licenses and learners' permits
25  which do meet federal standards for identification except that such
26  licenses and permits may state "Not for Federal Purposes". Provided,
27  however, that the commissioner may promulgate regulations providing for
28  additional design or color indicators for both such non-commercial driv-
29  ers' licenses and learners' permits if required to comply with federal
30  law.
31  (b) Applicants for a non-commercial driver's license or learner's
32  permit or a renewal thereof shall not be required to prove that they are
33  lawfully present in the United States.
34  (c) Application forms for non-commercial drivers' licenses and lear-
35  ners' permits which do not meet federal standards for identification or
36  for renewal thereof shall not state (i) the documents an applicant used
37  to prove age or identity, or (ii) an applicant's ineligibility for a
38  social security number where applicable, or (iii) an applicant's citi-
39  zenship or immigration status.
40  (d) The commissioner and any agent or employee of the commissioner
41  shall not retain the documents or copies of documents presented by
42  applicants for non-commercial drivers' licenses or learners' permits
43  which do not meet federal standards for identification to prove age or
44  identity except for a limited period necessary to ensure the validity
45  and authenticity of such documents.
46  (e) (i) A non-commercial driver's license or learner's permit which
47  does not meet federal standards for identification shall not be used as
48  evidence of a person's citizenship or immigration status, and shall not
49  be the basis for investigating, arresting, or detaining a person. (ii)
50  Neither the commissioner nor any agent or employee of the commissioner
51  shall inquire about the citizenship or immigration status of any appli-
52  cant for a non-commercial driver's license or learner's permit which
53  does not meet federal standards for identification.
54  § 6. Subdivisions 2 and 3 of section 508 of the  vehicle  and  traffic
55  law, as added by chapter 780 of the laws of 1972, are amended to read as
56  follows:

S. 1747--B                          6

 1    2. Any application required to be filed under this article shall be in
 2  a  manner  and  on  a  form prescribed by the commissioner. The
 3  applicant shall furnish all information required by statute and**, except**
 4  **as otherwise provided in this title,**  such other information as the
 5  commissioner shall deem appropriate.
 6    3.  License  record.  The  commissioner  shall  keep a record of every
 7  license issued which record shall be open to  public  inspection  during
 8  reasonable  business hours. **Provided, however, that the following infor-**
 9  **mation whenever contained within the record of non-commercial drivers'**
10  **licenses and learners' permits shall not be open to public inspection:**
11  **the photo image, social security number, client identification number,**
12  **name, address, telephone number, place of birth, country of origin,**
13  **place of employment, school or educational institution attended, source**
14  **of income, status as a recipient of public benefits, the customer iden-**
15  **tification number associated with a public utilities account, medical**
16  **information or disability information of any holders of, or applicants**
17  **for, such licenses and permits, and whether such licenses or permits**
18  **meet federal standards for identification or do not meet federal stand-**
19  **ards for identification.** Neither the commissioner nor his agent shall be
20  required to allow the inspection of an application, or to furnish a copy
21  thereof, or information therefrom, until a license has been issued ther-
22  eon.
23    § 7. Any system or method established by  the  commissioner  of  motor
24  vehicles  to determine eligibility for a non-commercial driver's license
25  or learner's permit which does not meet federal standards for  identifi-
26  cation  shall not be structured in a manner that substantially disadvan-
27  tages or denies such licenses or permits to applicants who do  not  have
28  social security numbers or who use documents issued by a foreign govern-
29  ment to prove age or identity.
30    § 8. This act shall take effect on the one hundred eightieth day after
31  it shall have become a law.  Effective immediately, the addition, amend-
32  ment and/or repeal of any rule or regulation necessary for the implemen-
33  tation  of  this act on its effective date are authorized to be made and
34  completed on or before such date.

## CERTIFICATE OF SERVICE

We hereby certify that on August 30, 2019 we electronically filed the foregoing with the clerk of the District Court using its CM/ECF system, and on the same date we mailed a true copy of the foregoing, via the United States Postal Service, to the following non-CM/ECF participant at the following address, by depositing into a United States Postal Service receptacle/depository provided for the same, a true copy of the foregoing, sealed in a postage prepaid, properly addressed wrapper, addressed to the Plaintiff *Pro Se* as follows, which is his last known address:

Daniel T. Warren, *Pro Se*
836 Indian Church Road
West Seneca, NY 14224

AND, we hereby certify that on August 30, 2019 we electronically filed with the clerk of District Court using its CM/ECF system, and on the same date the court's CM/ECF system caused to be (electronically) served the foregoing to the following CM/ECF participants at the following (email) addresses:

George M. Zimmerman, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James, and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York 14202
Phone: (716) 853-8400
Email: George.Zimmerman@ag.ny.gov

Joel J. Terragnoli, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James, and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York 14202
Phone: (716) 853-8400
Email: Joel.Terragnoli@ag.ny.gov

Linda Fang, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James,
and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
28 Liberty Street, 23rd Floor
New York, New York 10005
Phone: (212) 416-8656
Email: Linda.Fang@ag.ny.gov


AND, we hereby certify that on August 30, 2019 we mailed a true copy of the foregoing
via the United States Postal Service, to each of the following non-CM/ECF participants at the
following addresses, by depositing into a United States Postal Service receptacle/depository
provided for the same, true copies of the foregoing, sealed in postage prepaid, properly addressed
wrappers, addressed to each of the following "amicus curiae" counsel at the following addresses,
which are their last known addresses:


Christopher J. Hajec, Esq
Attorney for Immigration Reform Law Institute, appearing *"amicus curiae"*
**Office & P. O. Address:**
Christopher J. Hajec, Esq.
Immigration Law Reform Institute
25 Massachusetts Ave. NW
Suite 335
Washington, DC 20001
Phone: (202) 232-5590
Email: chajec@irli.org


Joshua Perry, Esq.
Special Counsel for Civil Rights for the Attorney General of the State of Connecticut, appearing
*"amicus curiae"*
**Office & P. O. Address:**
Office of the Attorney General of the State of Connecticut
Joshua Perry, Esq.
Special Counsel for Civil Rights
P.O.Box 120
55 Elm Street
Hartford, CT 06106
Phone: (860) 808-5372
Email: Joshua.perry@ct.gov

Dated:   Buffalo, New York
         August 30, 2019

MICHAEL A. SIRAGUSA, ESQ.
Erie County Attorney and Attorney for
Plaintiff Michael P. Kearns in his official
capacity as Clerk of the County of Erie,
New York

By:   s/ Kenneth R. Kirby
KENNETH R. KIRBY, ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2208
Email: kenneth.kirby@erie.gov

By:   s/Thomas J. Navarro, Jr.
THOMAS J. NAVARRO, JR.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2208
Email:  thomas.navarro@erie.gov