UNITED STATES DISTRICT
COURT: WESTERN DISTRICT
OF NEW YORK

---

MICHAEL P. KEARNS, in his individual
capacity and official capacity as Clerk of
the County of Erie, New York,

                    Plaintiff,

                                                No.1:19-cv-00902-EAW

v.


ANDREW M. CUOMO, in his
official capacity as Governor of
the State of New York, LETITIA
A. JAMES, in her official
capacity as Attorney General of
the State of New York, and
MARK J.F. SCHROEDER, in his
official capacity as
Commissioner of the New York
State Department of Motor
Vehicles,


                    Defendants.

---

# [PROPOSED] *AMICUS CURIAE* BRIEF OF NEW YORK STATE  CONSERVATIVE PARTY

## A. Introduction

The New York State Legislature recently passed a statute known as the "Green Light Law." This law allows individuals illegally in the United States to apply for and receive drivers' licenses, and generally prohibits state officials from disclosing those applicants' records to immigration authorities. The Green Light Law conflicts with federal immigration law, thereby violating the United States Constitution. And it puts plaintiff Michael P. Kearns, the Clerk of the County of Erie, in an impossible position. If he implements the Green Light Law, he risks prosecution under a federal statute that makes it a crime to conceal, harbor, or shield from detection an individual illegally in the United States. If he fails to implement the Green Light Law, he risks retaliation by Defendants, including removal from office. Obviously, something must give, hence this action.

More particularly, the Green Light Law conflicts with federal immigration law. The Supremacy Clause of the United States Constitution resolves the conflict in favor of federal law, rendering the Green Light Law unconstitutional. Yet the New York State Governor, Attorney

General, and Commissioner of the Department of Motor Vehicles

("DMV" hereinafter) require Mr. Kearns to carry out the unconstitutional

Green Light Law.  By doing so, they are violating the Supremacy Clause.

Plaintiff, as the man caught in the middle, brought this action seeking a

declaration that the Green Light Law is unconstitutional and a permanent

injunction prohibiting the Governor, Attorney General, and DMV

Commissioner from: (a) requiring Plaintiff to follow the Green Light Law;

and (b) removing Plaintiff from office, or utilizing any other enforcement

mechanism, for failing to follow the Green Light Law.

## B. The Conflict Between the Green Light Law and Federal Immigration Law, Pinning Plaintiff in the Middle

### 1. The Green Light Law's Departure From Prior Practices

Until recently, Section 502 of the New York Vehicle and Traffic Law

required an applicant for a driver's license to provide his or her Social

Security number, except for certain exceptions applicable to legal

residents who were not eligible for a Social Security number.

On June 17, 2019, New York Governor Andrew Cuomo signed the

Driver's License Access and Privacy Act, also known as the "Green Light

Law" (Bill Nos, A3675-B, S 1 747-B), which amends numerous provisions

of the New York Vehicle and Traffic Law, including Section 502.

Under the Green Light Law, an applicant for a driver's license no longer must provide a Social Security number. In lieu of a Social Security number, the applicant may submit:

> ... with respect to an application for a non-commercial driver's license or learner's permit which does not meet federal standards for identification, an affidavit signed by such applicant that they have not been issued a social security number.

Likewise, applicants for such a license or permit (or its renewal) "shall not be required to prove that they are lawfully present in the United States."

This amendment allows individuals illegally in the United States to apply for and obtain a New York State non-commercial driver's license or learner' s permit.

As Governor Cuomo explained, the Green Light Law was intended to "create a driver's license for undocumented people." *See* Denis Slattery, *Cuomo signs bill granting undocumented immigrants access to New York driver's licenses despite IIth -hour concerns,* NY DAILY NEWS, June 17, 2019, *available at* https://www.nydailynews.com/news/politics/ny-senate-approves-undocumented-immigrants-access-to- drivers-licenses-20 190618-eu 2gx3xv unetpnifuifjbsvn54- story.html (last visited July 8, 2019) ("You create a driver's license for undocumented  people,  you just have to make

13

sure you do it in a way that the feds don't come in the next day and access that database with the exact opposite intention," Cuomo told WAMC.").

Additionally, under the Green Light Law, the DMV Commissioner, his employees, or his agents cannot disclose applicants' records to any agency that primarily enforces immigration law, unless the agency provides a warrant or court order signed by a federal judge. Upon such a disclosure, the DMV Commissioner must notify within three days the individual whose records were requested.

The DMV Commissioner must also require any person or entity that receives or has access to applicants' records to certify that the records will not be used for civil immigration purposes, and will not be disclosed to an agency that primarily enforces immigration law unless the records are disclosed under a cooperative arrangement-between city, state, and federal agencies-that is not for the purpose of enforcing immigration law.

Additionally, under the Green Light Law, the DMV Commissioner (or his agent) cannot disclose any portion of any record that identifies whether the type of driver's license or learner's permit a person holds meets-or does not meet- federal standards for identification, except to the person

who is the subject of the record, where expressly required pursuant 49

U.S.C. Chapter 303 (part A, subtitle vi), or unless necessary to comply

with a lawful court order, judicial warrant signed by a federal judge, or

subpoena for individual records properly issued pursuant to the New York

C.P.L.R.

In other words, the Green Light Law requires agents of the DMV

Commissioner, such as Plaintiff and his staff, to knowingly conceal and

shield information and records containing evidence of illegal immigration

activity from the detection of federal immigration authorities. In recent

years, Erie County-which is a border community-has seen an increased

concentration of immigrants. It is not unusual for driver's license

applicants- without being asked-to provide Plaintiff and his staff with

information or records regarding their immigration status. This is because

the applicants are uncertain about the type of driver's license or learner's

permit for which they are eligible or about the type of records they must

provide to obtain a driver's license or permit. Therefore, it is not unusual

for Plaintiff and his staff to have actual knowledge of an applicant's

immigration status, irrespective of whether they ask about it.

Issuing driver's licenses to individuals illegally in the United States will,

among other things, allow the individuals to more easily evade detection by

federal law enforcement.

## 2. Plaintiff's Duty to Obey the State Green Light Law

Under section 205(1) of New York Vehicle and Traffic Law, Plaintiff, as Clerk of the County of Erie, **must** act as the agent of the Commissioner of the New York State Department of Motor Vehicles to issue vehicle registrations, license plates, and driver's licenses. These provisions are mandatory "unless and until the commissioner ... otherwise direct[s]" the County of Erie.

DMV Commissioner Schroeder has not directed the County to withhold driver's licenses. Instead, he publicly vowed to enforce the Green Light Law "to the letter of the law," even in the face of pushback from County Clerks such as Plaintiff.

Governor Cuomo also has the power to enforce the Green Light Law by removing from office any County Clerk who declines to carry out its requirements.

Under Article 13, Section 13(a) of the New York State Constitution: "[t]he governor may remove any elective sheriff, county clerk, district attorney or register within the term for which he or she shall have been elected; but before so doing the governor shall give to such officer a copy of the charges against him or her and an opportunity of being heard in his

or her defense."

The New York State Attorney General is required to prosecute any action or proceeding related to such removal. *See* N.Y. Executive Law § 63(1) ("The attorney-general shall ...  Prosecute and defend all actions and proceedings in which the state is interested ").

Cuomo has publicly refused to assure County Clerks (such as Plaintiff) that he would not remove them from office if they decline to follow the Green Light Law. *See* Ryan Whale n, *Schroeder Talks Drivers' Licenses For Undocumented Immigrants and More In One-On-One interview,* SPECTRUM NEWS, Jan. 11, 2019, *available at* https://s pectrumlocalnews.com/nys/ buffa lo/politics/2019/01 /12/schroeder-dmv-commissioner (last visited July 8, 2019) ("If the law is passed, he says he will enforce it as commissioner. He acknowledged there may be pushback from county clerks and urged them to voice their concerns to legislators in the coming weeks."); *Cuomo's DMV Nominee Says He Backs Driver's Licenses For Undocumented Immigrants,* STATE OF POLITICS, SPECTRUM NEWS, undated, *available at* https://www.nystateofpolitics.co m/2019/01/cuomos-dmv-nominee-says-he-backs-drivers-licenses-for-undocumented-immigrants/ (last visited July 8, 2019) ("Once the policymakers have their say and if they pass a joint a bill and the governor

signs it, I will fully implement what the legislation says and what the letter of the law is," said Mark Schroeder, the departing Buffalo city comptroller who was nominated this week to become the DMV commissioner. "That's what I'll do."). *See* Marian Hetherly & Mark Wozniak , *Governor Cuomo talks post-legislative session,* WBFO, June 25, 2019, *available at* https: //news.wbfo.orglpost/governor-cuomo-talks-post-legislative-session (last visited July 8, 2019) ("Gov. Andrew Cuomo is non-committal  when  it comes to  removing county clerks from office if they refuse to enforce the newly passed Green Light law. He, instead, is looking forward to its day in court."); Dave Rowley, *Cuomo calls legislative session most productive session,* CHAUTAUQUA TODAY, June 21, 2019, *available at* https://chautauquatoday.com/news/details.cfm?clientid=25&id=28645 1 #.XR9D6ehK.jD4 (last visited July 8, 2019) ("Cuomo dodged the issue of whether he would remove any county clerks that would not comply with the new Green Light Law.  He does expect a legal challenge.)"  Cuomo said:  " They are going to start a lawsuit and say 'I want a legal resolution first. And this is going to be a difficult legal question." ). *Id.*

Moreover, the New York State Attorney General has the power to bring an action against a public officer who has committed "an act which by law works a forfeiture of his office." *See* N.Y. Executive Law§ 63-a, and

Attorney General James has pledged to " vigorously defend" the Green Light Law's constitutionality, if challenged in court, adding: "[n]o one is above the law."

### 3. Plaintiff's Conflicting Duty to Obey Federal Immigration Laws

In stark contrast to New York's newly enacted Green Light Law, if Plaintiff were to obey that law, he would be in direct conflict with and in violation of federal immigration law, and he would face the credible threat of federal prosecution.

Specifically, the Trump Administration has already threatened retaliation against local officials that it believes are interfering with the enforcement of federal immigration law. For example, in 2018, President Trump urged the United States Attorney General to consider prosecuting the Mayor of Oakland, California for obstruction of justice. This threat of prosecution came after the Mayor alerted individuals who were illegally in the United States of a pending raid by federal law enforcement.

Under federal immigration law (8 U.S.C. § 1324), it is a felony for any person, "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to "conceal[ ], harbor[ ], or shield[ ] from detection . . . such alien in any place."

It also is a felony to attempt these acts, to aid or abet their commission, or to conspire to commit them.

In addition, to this criminal statute, Congress has passed other comprehensive immigration legislation that the Green Light Law would frustrate. For example, the Immigration and Reform Control Act of 1986 (IRCA) "makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers ...."[1] The purpose of the IRCA is to "combat the employment of illegal aliens." Thus, by providing driver's licenses to individuals illegally in the United States, and by prohibiting the disclosure of their records, the Green Light Law shields these individuals from detection and substantially facilitates their effort to remain in the United States.

The Green Light Law also directly conflicts with other federal statutes, including but not limited to 8 U.S.C. §§ 1373 and 1644, which prohibit state and local governments from prohibiting, or in any way restricting, their employees from "sending to, or receiving from, [federal officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."

Accordingly, the Green Light Law places Plaintiff, who is required under New York law to carry out its mandates, at risk of federal

prosecution under 8 U.S.C. §1324. The Green Light Law also frustrates Congress' goal in passing the IRCA, which is to prohibit the employment of individuals illegally in the United States.

According to its sponsors and supporters, the Green Light Law allows individuals illegally in the United States to "get to and from work" and "ensure that our industries have the labor they need to keep our economy moving." *See Assembly Passes Driver's License Access and Privacy Act #GreenLightNY,* NEWS RELEASE OF ASSEMBLY SP EAKER CARLE. HEASTIE, June 12, 2019, available at https://nyassembly.gov/Press/files/20190612.php (last visited July 8, 2019) (Assemblyman Marcos A. Crespo: "This legislation allows for undocumented immigrant New Yorkers, who contribute to our state economy in so many ways, to drive safely to and from school, work, and home").

## POINT I

## THE SELF-EVIDENT CONFLICT BETWEEN STATE AND FEDERAL IMMIGRATION LAW CAN ONLY BE RESOLVED IN FAVOR OF THE COMPREHENSIVE FEDERAL SCHEME, WHICH PREEMPTS ANY STATE ATTEMPTS TO INTEREFERE IN THIS FIELD

The case law that mandates that the conflict between the federal immigration laws and the Green Light Law's attempt to usurp those laws is

21

overwhelming and uniform, making the point indisputable. The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. *See Toll v. Moreno.* 458 U.S. 1, 10 (1982): *see generally* S. Legomsky & C. Rodriguez, *Immigration and Refugee Law and Policy,* 115-132 (5th ed. 2009). This authority rests, in . part, on the National Government's constitutional power to "establish a Uniform Rule of Naturalization," U.S. Const., Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations, *see Toll, supra.* at 10, S.Ct. 2977 (citing *United States v. Curtiss-Wright Export Com., 299 U.S. 304. 318, (1936).*

Federal governance of immigration and alien status is extensive and complex. Congress has specified categories of aliens who may not be admitted to the United States. *See* 8 U.S.C. § 1182. Unlawful entry and unlawful reentry into the country are federal offenses. §§ 1325, 1326. Once here, aliens are required to register with the Federal Government and to carry proof of status on their person. *See* §§ 1301-1306. Failure to do so is a federal misdemeanor. §§ 1304(e), 1306(a). Federal law also authorizes States to deny noncitizens a range of public benefits, § 1622; and it imposes sanctions on employers who hire unauthorized workers, § 1324a.

Congress has specified which aliens may be removed from the United

States and the procedures for doing so. Aliens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law. See § 1227.

Agencies in the Department of Homeland Security play a major role in enforcing the country's immigration laws. United States Customs and Border Protection (CBP) is responsible for determining the admissibility of aliens and securing the country's borders. *See* Dept. of Homeland Security, Office of Immigration Statistics, Immigration Enforcement Actions: 2010, p. 1 (2011). In 2010, CBP's Border Patrol apprehended almost half a million people. *Id.,* at 3. Immigration and Customs Enforcement (ICE), a second agency, "conducts criminal investigations involving the enforcement of immigration-related statutes." *Id.,* at 2. ICE also operates the Law Enforcement Support Center. LESC, as the Center is known, provides immigration status information to federal, state, and local officials around the clock. ICE officers are responsible "for the identification, apprehension, and removal of illegal aliens from the United States." Immigration Enforcement Actions, *supra,* at 2. Hundreds of thousands of aliens are removed by the Federal Government every year. See *id.,* at 4 (reporting there were 387,242 removals, and 476,405 returns without a removal order, in 2010).

Federalism, central to the constitutional design, adopts the principle

that both the National and State Governments have elements of sovereignty the other is bound to respect. See *Gregory v. Ashcroft.* 501 U.S. 452. 457 (1991); U.S. *Term Limits. Inc. v. Thornton,* 514 U.S. 779, 838 (1995) (KENNEDY. J.. concurring). From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. The Supremacy Clause provides a clear rule that federal law "shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby. Any thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law. See *Crosby v. National Foreign Trade Council.* 530 U.S. 363, 372 (2000): *Gibbons v. Ogden,* 9 Wheat. 1, 210-211, 6 L.Ed. 23 (1824).

State law must also give way to federal law in at least two other circumstances. First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. See *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88. 115 (1992). The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive ... that Congress left no room for the States to supplement it" or where there is a "federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws

on the same subject." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947): see *English v. General Elec.* Co., 496 U.S. 72, 79(1990).

Second, state laws are preempted when they conflict with federal law. *Crosby, supra.* at 372. This includes cases where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers. Inc. v. Paul.* 373 U.S. 132. 142-143 (1963). and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines,* 312 U.S. at 67; *see also Crosby, supra.* at 373 ("What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects").

For example, the U.S. Supreme Court discussed federal alien-registration requirements in *Hines v. Davidowitz.* 312 U.S. 52, 61. In 1940, Congress added to federal immigration law a "complete system for alien registration." *Id.,* at 70. The Court found that Congress intended the federal plan for registration to be a "single integrated and all-embracing system." *Id.,* at 74. Because this was a "complete scheme ... for the registration of aliens", it did not allow the States to "curtail or complement" federal law or to "enforce additional or auxiliary regulations." *Id.,* at 66-67. As a consequence, the Court ruled that

Pennsylvania could not enforce its own alien-registration program. *See id.,* at 59, 74.

The present regime of federal regulation also remains comprehensive. Federal law now includes a requirement that aliens carry proof of registration. 8 U.S.C. § 1304(e). Other aspects, however, have stayed the same. Aliens who remain in the country for more than 30 days must apply for registration and be fingerprinted. *Compare* § 1302(a) *with id., §* 452(a) (1940 ed.). Detailed information is required, and any change of address has to be reported to the Federal Government. *Compare* §§ 1304(a), 1305(a) (2006 ed.), *with id., §§* 455(a), 456 (1940 ed.). The statute continues to provide penalties for the willful failure to register. *Compare* § 1306(a) (2006 ed.), *with id.,* § 457 (1940 ed.).

The framework enacted by Congress leads to the conclusion here, as it did in *Hines,* that the Federal Government has occupied the field of immigration. *See American Ins. Assn. v. Garamendi* 539 U.S. 396 419, n. 11 (characterizing *Hines* as a field preemption case); *Pennsylvania v. Nelson,* 350 U.S. 497, 504  (1956) (same); *see also* Dinh, *Reassessing the Law of Pre*emption, 88 Geo. L.J.2085, 2098-2099, 2107 (2000) (same). The federal statutory directives provide a full set of standards governing immigration, including the punishment for noncompliance. It was designed as a "'harmonious whole.'" *Hines. supra.* at 72.  Where

Congress occupies an entire field, as it has in the field of immigration, even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards. See *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238. 249 (1984).

Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders. If this were not the case, every State could give itself independent authority to prosecute federal immigration violations, "diminish[ing] the [Federal Government]'s control over enforcement" and "detract[ing] from the 'integrated scheme of regulation' created by Congress." *Wisconsin Dept. of Industry v. Gould Inc,* 475 U.S. 282, 288-289 (1986).

Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field (like the field of illegal immigration) that has been occupied by federal law. *See California v. Zook.* 336 U.S. 725. 730- 731, 733, (1949): *see also In re Loney,* 134 U.S. 372. 375-376 (1890) (States may not impose their own punishment for perjury in federal courts).

Thus, the basic premise of field preemption - that States may not enter, in any respect, an area the Federal Government has reserved for

itself – mandates rejection of the Green Light Law, because permitting the State to interfere with the federal offenses here would conflict with the careful framework Congress adopted. *Cf. Buckman* Co. *v. Plaintiffs' Legal* Comm.. 531 U.S. 341. 347-348.(2001) (States may not impose their own punishment for fraud on the Food and Drug Administration); *Wisconsin Dept.. supra,* at 288, (States may not impose their own punishment for repeat violations of the National Labor Relations Act).

Moreover, the Green Light Law inherently creates a conflict with the plan Congress put in place. *See Wisconsin Dept. supra,* at 286, "[Conflict is imminent whenever two separate remedies are brought to bear on the same activity" (internal quotation marks omitted).

Of course, the ordinary principles of preemption include the well-settled proposition that a state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines. supra,* 312 U.S. at 67. Accordingly, the U.S. Supreme Court has long recognized that a "[c]onflict in technique can be fully as disruptive to the system Congress enacted as conflict in overt policy." *Motor Coach Employees v. Lockridge.* 403 U.S. 274. 287 (1971). Thus, it logically follows that a state law to the contrary of federal immigration law is an obstacle to the regulatory system Congress chose must be struck down by this Court. *See Puerto Rico Dept. of Consumer*

*Affairs v. Isla Petroleum Corp.,* 485 U.S. 495, 503 (1988) ("Where a comprehensive federal scheme intentionally leaves a portion of the regulated field without controls, *then* the preemptive inference can be drawn - not from federal inaction alone, but from inaction joined with action").

Accordingly, it is beyond cavil that Congress intended to completely preempt the field of immigration law that the Green Light Law now seeks to usurp.

However, in a final excess of caution, I do note the Harvard Law Review, in its Volume 126 in 2012, in its round-up analysis of that year's U.S. Supreme Court decisions on immigration,  noted that "[t]he federal government has maintained nearly exclusive authority over immigration law for more than 130 years", *see id.* at 335, but also scored the Court for "follow[ing] a line of doctrine against presumption against preemption to state statutes when a saving construction is fairly possible", *see id.* at 336. Here, however, no "saving construction is fairly possible", as the Green Light Law clearly mandates that Plaintiff ignore violations of federal immigration law upon pain of state law penalties.


CONCLUSION

For all of the foregoing reasons, *Amicus* respectfully requests that Plaintiff's Motion for a Preliminary Injunction be granted and Defendants' Motion to Dismiss be denied.

Dated: September 20, 2019

Respectfully submitted,

Dennis Houdek, Esq.
Counsel for *Amicus Curiae*
305 Broadway, Seventh Floor
New York, NY 10007
(212) 822-1470