UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL P. KEARNS, in his individual capacity and
official capacity as Clerk of the County of Erie, New York,

                Plaintiff,                No. 1:19-cv-00902-EAW

vs.

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York,
LETITIA A. JAMES, in her official capacity as
Attorney General of the State of New York, and
MARK J.F. SCHROEDER, in his official capacity as
Commissioner of the New York State Department of
Motor Vehicles,

                Defendants.
_____

# PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO THE NEW YORK CIVIL LIBERTIES UNION'S AMICUS BRIEF

                          MICHAEL A. SIRAGUSA, Erie County
                          Attorney and Attorney for Plaintiff Michael
                          P. Kearns in his individual capacity and official
                          capacity as Clerk of the County of Erie, New York

                          KENNETH KIRBY, ESQ.
                          THOMAS J. NAVARRO, JR. ESQ.
                          Assistant County Attorneys, of Counsel
                          95 Franklin Street, Suite 1635
                          Buffalo, NY  14202
                          (716) 858-2208

# Table of Contents

Page

Preliminary Statement ...........................................................................................................1

Argument ...............................................................................................................................1

    Federal statutes governing the voluntary sharing of immigration information
    (8 U.S.C. §§ 1373 and 1644) are Constitutional. ...............................................................1

    A.    The Second Circuit's prior ruling on the Constitutionality of these statutes
           is consistent with *Murphy* and, therefore, controls. .................................................1

    B.    Sections 1373 and 1644 also regulate private individuals. .....................................6

    C.    Sections 1373 and 1644 are consistent with the principles
           of the anti-commandeering doctrine. ......................................................................8

Conclusion .............................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ansley v. Banner Health Network*,
  437 P.3d 899 (Ariz. Ct. App. 2019), *review granted in part* (Aug. 27, 2019) ..........5

*Arizona v. United States*,
  567 U.S. 387 (2012)................................................................................................3

*Brown v. Board of Education*,
  347 U.S. 483 (1954)................................................................................................4

*City of New York* v. *United States*,
  179 F.3d 29 (2d Cir. 1999), *cert. den*, 528 U.S. 1115 (2000)................1, 2, 3, 4, 5, 6

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018)........................................................................1, 2, 4, 5, 6, 7, 8

*Printz v. United States*,
  521 U.S. 898 (1997)........................................................................................2, 4, 6

*Reno v. Condon*,
  528 U.S. 141 (2000)............................................................................................2, 7

*States of New York v. Dep't of Justice*,
  343 F. Supp. 3d 213 (S.D.N.Y. 2018), *appeal pending*,
  Nos. 19-267 (L), 19-275 (2d Cir. 2019).............................................................5, 6

*United States v. California*,
  314 F. Supp. 3d 1077 (E.D. Cal. 2018), *aff'd in part, rev'd in part*,
  921 F.3d 865 (9th Cir. 2019) ..................................................................................6

**Statutes**

8 U.S.C. § 1373................................................................................1, 2, 3, 4, 5, 6, 8, 9

8 U.S.C. § 1644................................................................................1, 2, 3, 4, 5, 6, 8, 9

Airline Deregulation Act of 1978 ..................................................................................2

Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721..........................................7

Federal Medicare Act.....................................................................................................5

Green Light Law ....................................................................................................5, 6, 9

**Preliminary Statement**

The New York Civil Liberties Union ("NYCLU") asks this Court to disregard a binding decision from the Second Circuit, which has already held that 8 U.S.C. §§ 1373 and 1644 are Constitutional and do not violate the anti-commandeering doctrine. Although the Southern District of New York recently held that the Supreme Court's decision in *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), invalidates the Second Circuit's prior ruling, that issue is now on appeal to the Second Circuit. And unless the Second Circuit changes course, this Court is required to follow its precedent, particularly because *Murphy* does not require a different result. Indeed, the U.S. Department of Justice ("DOJ") has submitted briefs to the Second Circuit setting forth the reasons why its prior ruling was correct and consistent with *Murphy*. Plaintiff Michael P. Kearns refers to those briefs and augments some of the key arguments here. *See* Dkt Nos. 60-1 at *30-37, 60-2 at *15-22. In short, Sections 1373 and 1644 are preemption statutes, not ones that commandeer state legislatures. And they govern the enforcement of private individuals, *i.e.*, undocumented aliens. They are Constitutional and, therefore, preempt the Green Light Law's contrary provisions.

**Argument**

**Federal statutes governing the voluntary sharing of immigration information (8 U.S.C. §§ 1373 and 1644) are Constitutional.**

  A. **The Second Circuit's prior ruling on the Constitutionality of these statutes is consistent with *Murphy* and, therefore, controls.**

Sections 1373 and 1644 are preemption statutes, in contrast to statutes that issue direct orders to state legislatures, meaning they are Constitutional. The Second Circuit's prior ruling in *City of New York* v. *United States*, 179 F.3d 29, 35 (2d Cir. 1999), *cert. den*, 528 U.S. 1115 (2000), recognized them as such, making the decision consistent with the Supreme Court's

ruling in *Murphy*. Therefore, *City of New York* controls here.

The anti-commandeering doctrine, which is rooted in the Tenth Amendment, prohibits the federal government from "compel[ing] the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). In *Murphy*, the Supreme Court held that "[t]he basic principle—that Congress cannot issue direct orders to state legislatures—applies" both when Congress commands affirmative action and imposes a prohibition. *Murphy*, 138 S. Ct. at 1478. However, the Court also made clear that it is common for federal statutes to appear as though they are issuing direct orders to state legislatures, when, in reality, they are merely preempting state law that conflicts with them. *See id.* at 1480. Indeed, the Court cited an example of a federal statute expressly *prohibiting* states from taking certain action, yet the statute nonetheless complied with the anti-commandeering doctrine:

> The Airline Deregulation Act of 1978 lifted prior federal regulations of airlines, and "[t]o ensure that the States would not undo federal deregulation with regulation of their own," the Act provided that "no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any [covered] air carrier."
>
> This language might appear to operate directly on the States, but it is a mistake to be confused by the way in which a preemption provision is phrased. As we recently explained, "we do not require Congress to employ a particular linguistic formulation when preempting state law . . . ."

*Id.* (internal citations omitted). And the anti-commandeering doctrine does not apply when a federal statute also regulates private actors, as the above-referenced example also does. *Id.* at 1478 (citing *Reno v. Condon*, 528 U.S. 141 (2000)).

In much the same way, 8 U.S.C. §§ 1373 and 1644 *preempt* state legislatures from

2

hindering the federal government's regulation of private individuals, *i.e.*, undocumented aliens. Under Section 1373, "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from," federal immigration authorities, "information regarding the citizenship of immigration status . . . of any individual." Similarly, under Section 1644—which is written in the passive voice—"no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from" federal immigration authorities "information regarding the immigration status . . . of an alien in the United States." While these provisions are phrased to *prohibit* certain conduct, it would be a "mistake to confuse" them as commandeering statutes when they are merely attempting to exercise, via preemption, Congress's "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

Consistent with this line of authority, in *City of New York*, 179 F.3d at 35, *cert. den*, 528 U.S. 1115 (2000), the Second Circuit held that Sections 1373 and 1644 do not violate the anti-commandeering doctrine. Notably, in *City of New York*, the City had challenged these statutes after Mayor Koch had issued an Executive Order prohibiting the voluntary sharing of an individual's immigration status with federal immigration authorities. In upholding the Constitutionality of these statutes, the court held that "states do not retain under the Tenth Amendment an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs." Otherwise, "states will at times have the power to frustrate effectuation of some [federal] programs." *Id.* The Mayor's Order had created a regulatory collision in which federal law was supreme. And the Second Circuit plainly analyzed these statutes through the lens of *preemption*. It held: "[t]he potential for deadlock thus inheres in dual sovereignties, but the Constitution has resolved that problem in the Supremacy Clause,

which bars states from taking actions that frustrate federal laws and regulatory schemes." *Id.* In other words, the federal government has expressly preempted such conduct by the states. Nothing in *Murphy* overrules this portion of the Second Circuit's analysis which, again, focuses on preemption.

The NYCLU argues that *City of New York* is no longer good law because it makes the distinction between statutes that order states to affirmatively act and those that merely prohibit states from taking action—a distinction that *Murphy* rejected as empty. This argument fails for two reasons. *First*, *City of New York* does not make this distinction to the extent the NYCLU claims. It merely notes that Sections 1373 and 1644 do not require states to engage in any affirmative conduct, and that information sharing requirements—in contrast to the prohibitions in 1373 and 1644—are permitted under prior Supreme Court jurisprudence. *See id.* (citing *Printz*, 521 U.S. at 917-18). *Second*, even if the NYCLU were correct, the holding in *City of New York* is also based, in part, on a preemption analysis, as explained above. Although the Second Circuit's analysis noted an anti-commandeering issue (*i.e.*, that these statutes do not require states to engage in any affirmative conduct), the court's analysis then shifts to the issue of preemption and the intentional "frustration" of federal programs by states:

> If Congress may not forbid states from outlawing even voluntary cooperation with federal programs by state and local officials, states will at times have the power to frustrate effectuation of some programs. Absent any cooperation at all from local officials, some federal programs may fail or fall short of their goals unless federal officials resort to legal processes in every routine or trivial matter, often a practical impossibility. For example, resistance to *Brown v. Board of Education*, 347 U.S. 483 (1954), was often in the nature of a refusal by local government to cooperate until under a court order to do so.

179 F.3d at 35. The analysis refers to the Supremacy Clause, as opposed to the anti-

commandeering doctrine, as the basis for its ruling. Therefore, even accepting as true the NYCLU's argument that the anti-commandeering portion of the Second Circuit's analysis in *City of New York* is no longer good law after *Murphy*, the remainder of the analysis—on preemption grounds—still is. Indeed, it is consistent with *Murphy*.

Further, *Murphy* dealt with a federal statute regulating gambling, which is more traditionally an area regulated by states and not nearly as traditional an area of federal control as immigration, where Congress is far more likely to utilize—and, indeed, has utilized—its preemption powers. Therefore, any federal statute that prohibits state conduct with respect to immigration is much more likely to be viewed as preemptive (as the Second Circuit did in *City of New York*), when compared to a federal statute regulating an area of traditional state concern, which may be more likely to be viewed as commandeering.[1]

The NYCLU's brief oversimplifies the holding in *Murphy*, and largely ignores the fact that preemption statutes often read like prohibitions on state legislatures.[2] Although the Southern District of New York in *States of New York v. Dep't of Justice*, 343 F. Supp. 3d 213 (S.D.N.Y. 2018), *appeal pending*, Nos. 19-267 (L), 19-275 (con.) (2d Cir. 2019), and other district courts outside of the Second Circuit, have held Section 1373 to be unconstitutional on anti-commandeering grounds, not a single Court of Appeals has affirmed those decisions *on that basis*. And one of those district courts even acknowledged that *City of New York* was decided on

---

[1]   In the case at bar, Sections 1373 and 1644 preexisted New York State's enactment of the Green Light Law, portions of which are plainly calculated to interfere with, or impede, federal regulation of immigration, much like Mayor Koch's Executive Order was in *City of New York*.

[2]   Since *Murphy* was decided, at least one court has applied this portion of the decision to hold that the federal Medicare Act and its regulations preempt a state law, even though they issue direct orders *to states*. *See Ansley v. Banner Health Network*, 437 P.3d 899, 910 (Ariz. Ct. App. 2019), *review granted in part* (Aug. 27, 2019).

grounds other than the issue of whether Section 1373 affirmatively compels conduct versus whether it prohibits it. In particular, in *United States v. California*, 314 F. Supp. 3d 1077, 1108 (E.D. Cal. 2018), *aff'd in part, rev'd in part*, 921 F.3d 865 (9th Cir. 2019), the court held that *Murphy* undercuts "portions of" the Second Circuit's reasoning in *City of New York*, thereby acknowledging that other portions were not necessarily invalidated (namely, the preemption portions). The court further noted that the holding in *City of New York* also may be limited to, among other things, "the specific City Executive Order at issue." *Id.* Notably, the Executive Order in *City of New York* is nearly identical to the provisions in the Green Light Law prohibiting the DMV and its agents from voluntarily sharing an applicant's information with federal immigration authorities.

Additionally, the Southern District's ruling in *States of New York* ignores a critical portion of the Supreme Court's holding in *Printz*, 521 U.S. at 918, which distinguished statutes that "require only the provision of information to the Federal Government," as they "do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." *See* Dkt. 60-1 at *36. As the DOJ explains, "the fact that § 1373 prohibits restrictions on information sharing rather than affirmatively mandating information sharing makes the statute *less intrusive* because it allows local and state officials to individually refuse to provide information to DHS." *Id.* at *37. Therefore, based on the standard set forth in *Printz*, Sections 1373 and 1644 are Constitutional.

**B.   Sections 1373 and 1644 also regulate private individuals.**

The NYCLU also argues that Sections 1373 and 1644 cannot be preemption statutes because they regulate only states, not private actors. Not so. As the DOJ explains in its briefs, these statues were adopted to allow state and local criminal justice systems to prosecute

undocumented aliens before notifying federal immigration authorities of their release dates. Thus, these statutes also involve the regulation of *private individuals*. *See* Dkt Nos. 60-1 at *33-35, 60-2 at *18-20.

And even accepting as true the NYCLU's argument that Section 1373, on its face, regulates only state action as opposed to private individuals, the same is not true for Section 1644. Whereas Section 1373 states that "*a Federal, State, or local government entity or official* may not prohibit" voluntary information sharing with federal officials, Section 1644 states, in the passive voice, that "no State or local government entity *may be prohibited*" from such voluntary sharing. In other words, Section 1644, on its face, is written more broadly and can be read to prevent anyone—whether state or private actors—from prohibiting the voluntary sharing. As the Supreme Court made clear in *Murphy*, "[t]he anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." Murphy, 138 S. Ct. at 1479 (citing *Reno v. Condon*, 528 U.S. 141 (2000)).

*Reno* is instructive. There, South Carolina had allowed its DMV to commercially sell personal information provided on driver's license applications. The federal government passed the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721, which prohibits state DMVs, officers, employees, or contractors from disclosing that information. It also prohibits other authorized recipients (including third parties) of that information from selling it. South Carolina sued. The Supreme Court held that the DPPA was Constitutional because it "regulates the universe of entities that participate as suppliers to the market for motor vehicle information—the States as initial suppliers of the information in interstate commerce and private resellers or redisclosers of that information in commerce." *Reno*, 528 U.S. at 151.

Here, because the plain text of Section 1644 is not limited on its face to state

actors, the "law applie[s] equally to state and private actors," making it Constitutional. *See Murphy*, 138 S. Ct. at 1479.

    **C.    Sections 1373 and 1644 are consistent with the principles of the anti-commandeering doctrine.**

Because Sections 1373 and 1644 are preemption statutes, the Court need not conduct an anti-commandeering analysis to determine whether the statutes are consistent with the principles of the doctrine. But even if the Court did so, it would find consistency.

*First*, consistent with the principles of the anti-commandeering doctrine, these statutes continue to maintain "[a] healthy balance of power between the States and the Federal Government." *Murphy*, 138 S. Ct. at 1477 (internal citation omitted). They do not require states to participate in federal immigration enforcement. There is no mandatory information sharing. They merely prohibit states from stopping individuals from voluntarily sharing information with federal authorities. This is a balanced approached in an area in which Congress's power to regulate is broad, namely, immigration.

*Second*, Sections 1373 and 1644 promote political accountability. *Id.* (internal citation omitted). The voters who like or dislike these statutes know whom to credit or blame. Notably, this principle arises in the context of whether "a State imposes regulations only because it has been commanded to do so by Congress," meaning "responsibility is blurred." *Id.* But here, again, Congress is not requiring the states to impose any regulation. It is simply requiring that the individuals not be blocked from voluntarily sharing information.

And *third*, Sections 1373 and 1644 do not shift the costs of regulation to the States. *Id.* The NYCLU's argument that these statutes require New York State to expend resources to help federal authorities is not sincere, particularly when viewed through the lens of

the Green Light Law. As Kearns has previously asked, if the State Legislature were merely trying to preserve limited State resources when it prohibited its agents and employees from sharing information with immigration authorities, then why does the statute then require the same State agents and employees to promptly alert licensees when immigration authorities seek their records? The answer is simple: the Green Light Law has nothing to do with preserving resources. Its goal is to shield undocumented aliens from the detection of federal immigration authorities.

## Conclusion

For the foregoing reasons, Sections 1373 and 1644 are Constitutional and, therefore, preempt the Green Light Law. Consequently, the Court should deny Defendants' motion to dismiss and grant Kearns' motion for a preliminary injunction.

Dated: September 27, 2019
Buffalo, New York

MICHAEL A. SIRAGUSA
Erie County Attorney and Attorney for
Plaintiff Michael P. Kearns in his individual
capacity and official capacity as Clerk of the
County of Erie, New York

By: s/ Kenneth R. Kirby
KENNETH R. KIRBY, ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2208
Email: kenneth.kirby@erie.gov

By: s/ Thomas J. Navarro
THOMAS J. NAVARRO, JR.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1635
Buffalo, NY  14202
Tel:  (716) 858-2208
Email: thomas.navarro@erie.gov

**CERTIFICATE OF SERVICE**

We hereby certify that on September 27, 2019, we electronically filed the foregoing with the clerk of the District Court using its CM/ECF system, and on the same date we mailed a true copy of the foregoing, via the United States Postal Service, to the following non-CM/ECF participant at the following address, by depositing into a United States Postal Service receptacle/depository provided for the same, a true copy of the foregoing, sealed in a postage prepaid, properly addressed wrapper, addressed to Proposed Intervenor Daniel T. Warren, as follows:

Daniel T. Warren
836 Indian Church Road
West Seneca, NY 14224
Email: d.warren@roadrunner.com

AND, we hereby certify that on September 27, 2019, we electronically filed the foregoing with the clerk of the District Court using its CM/ECF system, and on the same date we mailed a true copy of the foregoing, via the United States Postal Service, to the following non-CM/ECF participant at the following address, by depositing into a United States Postal Service receptacle/depository provided for the same, a true copy of the foregoing, sealed in a postage prepaid, properly addressed wrapper, addressed to counsel for Proposed Amicus Contributor the New York State Conservative Party, as follows:

Dennis Houdek, Esq.
305 Broadway, Seventh Floor
New York, NY 10007
Phone: (212) 822-1470

AND, we hereby certify that on September 27, 2019, we electronically filed with the clerk of District Court using its CM/ECF system, and on the same date the court's CM/ECF system caused to be (electronically) served the foregoing to the following CM/ECF participant at the following (email) addresses:

George M. Zimmerman, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James, and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York 14202
Phone: (716) 853-8400
Email: George.Zimmerman@ag.ny.gov

Joel J. Terragnoli, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James,

and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York 14202
Phone: (716) 853-8400
Email: Joel.Terragnoli@ag.ny.gov

Linda Fang, Esq.
New York State Office of the Attorney General
Attorney for the Defendant(s) Governor Andrew M. Cuomo, Attorney General Letitia A. James, and Commissioner of the New York State Department of Motor Vehicles Mark J.F. Schroeder.
**Office & P. O. Address:**
28 Liberty Street, 23rd Floor
New York, New York 10005
Phone: (212) 416-8656
Email: Linda.Fang@ag.ny.gov

AND, we hereby certify that on September 27, 2019, we electronically filed with the clerk of District Court using its CM/ECF system, and on the same date the court's CM/ECF system caused to be (electronically) served the foregoing to the following counsel for each of the "amicus curiae" and Proposed Intervenor at the following (email) addresses:

Christopher T. Dunn, Esq.
Attorney for the N.Y. Civil Liberties Union, appearing "*amicus curiae*"
**Office & P. O. Address:**
Christopher T. Dunn, Esq.
NY Civil Liberties Union
125 Broad Street
17th Floor
New York, NY 10004
212-344-3005
Email: cdunn@nyclu.org

Antony Philip Falconer Gemmell, Esq.
Attorney for the N.Y. Civil Liberties Union, appearing "*amicus curiae*"
**Office & P. O. Address:**
Antony Philip Falconer Gemmell
NY Civil Liberties Union
125 Broad Street
19th Floor
New York, NY 10004
212-607-3320
Email: agemmell@nyclu.org

11

Amy Louise Belsher, Esq.
Attorney for the N.Y. Civil Liberties Union, appearing "*amicus curiae*"
**Office & P.O. Address:**
New York Civil Liberties Union Foundation
Amy Louise Belsher
125 Broad Street
19th Floor
New York, NY 10004
212-607-3342
Email: abelsher@nyclu.org

Christopher J. Hajec, Esq.
Attorney for Immigration Reform Law Institute, appearing "*amicus curiae*"
**Office & P. O. Address:**
Christopher J. Hajec, Esq.
Immigration Law Reform Institute
25 Massachusetts Ave. NW
Suite 335
Washington, DC 20001
Phone: (202) 232-5590
Email: chajec@irli.org

Joshua Perry, Esq.
Special Counsel for Civil Rights for the Attorney General of the State of Connecticut, appearing "*amicus curiae*"
**Office & P. O. Address:**
Office of the Attorney General of the State of Connecticut
Joshua Perry, Esq.
Special Counsel for Civil Rights
P.O. Box 120
55 Elm Street
Hartford, CT 06106
Phone: (860) 808-5372
Email: Joshua.perry@ct.gov

Francisca D. Fajana, Esq.
Attorney for Rural and Migrant Ministry, *et al.*, Proposed Intervenor
**Office & P. O. Address:**
Francisca D. Fajana
Latino Justice PRLDEF
475 Riverside Drive
Suite 1901
New York, NY 10115

212-739-7576
Email: ffajana@latinojustice.org

Jackson Chin, Esq.
Attorney for Rural and Migrant Ministry, *et al.*, Proposed Intervenor
**Office & P. O. Address:**
Jackson Chin
Latino Justice PRLDEF
475 Riverside Drive
Suite 1901
New York, NY 10115
212 739-7572
Email: jchin@latinojustice.org

Jorge Luis Vasquez , Jr., Esq
Attorney for Rural and Migrant Ministry, *et al.*, Proposed Intervenor
**Office & P. O. Address:**
Jorge Luis Vasquez , Jr.
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1903
New York, NY 10115
212-739-7590
Email: jvasquez@latinojustice.org


Kathleen A. Reilly, Esq
Attorney for Rural and Migrant Ministry, *et al.*, Proposed Intervenor
**Office & P. O. Address:**
Kathleen A. Reilly
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
212-836-7450
Email: kathleen.reilly@arnoldporter.com


Maurice Weathers Sayeh, Esq
Attorney for Rural and Migrant Ministry, *et al.*, Proposed Intervenor
**Office & P. O. Address:**
Maurice Weathers Sayeh
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
212-836-7864
Email: maurice.sayeh@arnoldporter.com

13

Dated: Buffalo, New York
September 27, 2019

        MICHAEL A. SIRAGUSA
        Erie County Attorney and Attorney for
        Plaintiff Michael P. Kearns in his individual
        capacity and official capacity as Clerk of the
        County of Erie, New York

        By: s/ Kenneth R. Kirby
        KENNETH R. KIRBY, ESQ.
        Assistant County Attorney, of Counsel
        95 Franklin Street, Suite 1635
        Buffalo, NY 14202
        Tel: (716) 858-2208
        Email: kenneth.kirby@erie.gov

        By: s/ Thomas J. Navarro
        THOMAS J. NAVARRO, JR.
        Assistant County Attorney, of Counsel
        95 Franklin Street, Suite 1635
        Buffalo, NY 14202
        Tel: (716) 858-2208
        Email: thomas.navarro@erie.gov