UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL P. KEARNS, in his individual
capacity and official capacity as Clerk
of the County of Erie, New York,

                Plaintiff,

                v.

ANDREW M. CUOMO, in his official capacity
as Governor of the State of New York,
LETITIA A. JAMES, in her official capacity as
Attorney General of the State of New York, and
MARK J.F. SCHROEDER, in his official
capacity as Commissioner of the New York
State Department of Motor Vehicles,

                Defendants.
_____

**DECISION AND ORDER**

1:19-CV-00902 EAW

## I.   BACKGROUND

The above-captioned action was commenced on July 8, 2019, by Erie County Clerk Michael P. Kearns ("Plaintiff") in response to a law passed by the New York State Legislature and signed into law by defendant Governor Andrew M. Cuomo in June 2019. (Dkt. 1). The Act is titled "Driver's License Access and Privacy Act," but has been commonly referred to as the "Green Light Law." The law is scheduled to take effect on December 14, 2019, and amends New York State's Vehicle and Traffic Law in a number of ways, including as follows: (1) it protects from public disclosure certain information related to non-commercial driver's license applications and documents submitted with the applications, and restricts the release of records to agencies that primarily enforce

- 1 -

immigration law; (2) it expands the proof of identity that can be submitted with an application for a non-commercial driver's license, including allowing for certain documents issued by foreign countries; and (3) it specifically provides that applicants for a non-commercial driver's license and learner's permit or a renewal thereof shall not be required to prove that they are lawfully present in the United States. *See* Ch. 37, 2019 N.Y. Laws.

Plaintiff's First Amended Complaint[1] seeks a declaratory judgment that certain portions of the Green Light Law conflict with federal law and attempt to regulate a field that Congress has determined to be within its exclusive governance, and therefore are preempted under the Supremacy Clause of the United States Constitution. Plaintiff also seeks a permanent injunction enjoining the implementation and enforcement of the challenged portions of the Green Light Law, and preventing the removal of Plaintiff from office for his failure to "carry out any and all unconstitutional requirements of the Green Light Law." (Dkt. 41 at 20).

Shortly after commencing this litigation, Plaintiff filed a motion for a preliminary injunction, seeking to enjoin enforcement and implementation of the Green Light Law prior to its effective date of December 14, 2019. (Dkt. 3). On August 16, 2019, Governor Cuomo, New York Attorney General Letitia James, and Commissioner of New York State

---

[1] Plaintiff filed a First Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), on September 4, 2019. (Dkt. 41).

Department of Motor Vehicles Mark J.F. Schroeder (hereinafter collectively "Defendants") filed a motion to dismiss. (Dkt. 24).[2]

Since the filing of this lawsuit, numerous third parties have sought leave of court to become involved in various ways. On August 21, 2019, the Court set a deadline of Friday, September 6, 2019, for the filing of any requests for leave to submit an *amicus curiae* brief. (Dkt. 29).

The Court has granted the requests of various third parties to appear as *amicus curiae*. The Court granted the Connecticut Attorney General's request by letter dated July 31, 2019 (Dkt. 15), for leave to file an *amicus curiae* brief in support of Defendants (Dkt. 16); the Court granted the Immigration Reform Law Institute's request by letter dated August 14, 2019 (Dkt. 19), for leave to file an *amicus curiae* brief in support of Plaintiff (Dkt. 20); and the Court granted the New York Civil Liberties Union's ("NYCLU") request by letter dated September 6, 2019 (Dkt. 52), for leave to file an *amicus curiae* brief in support of Defendants (Dkt. 53). The Immigration Reform Law Institute filed its brief on August 14, 2019 (Dkt. 21); on August 23, 2019, the State of Connecticut joined with seven additional states and the District of Columbia and filed an *amici curiae* brief (Dkt. 35); and the NYCLU filed its brief on September 9, 2019 (Dkt. 54).

On August 9, 2019, Daniel T. Warren, a resident of the Town of West Seneca and Erie County taxpayer, filed a *pro se* application to intervene or alternatively for leave to participate as *amicus curiae*. (Dkt. 17). On August 22, 2019, Plaintiff filed a memorandum

---

[2] With the consent of Plaintiff and Defendants, the Court agreed to consider the merits of the pending motion to dismiss in light of the First Amended Complaint. (Dkt. 51).

in opposition to Mr. Warren's motion to intervene, although he took no position with respect to his alternative request to file an *amicus curiae* brief. (Dkt. 30). Similarly, Defendants filed a letter in opposition to Mr. Warren's motion to intervene, although they did not object to his request to file an *amicus curiae* brief. (Dkt. 31). Mr. Warren filed a reply memorandum on August 30, 2019. (Dkt. 39). Relatedly, on September 16, 2019, Mr. Warren filed a motion for electronic service. (Dkt. 61).[3]

On September 4, 2019, the Rural and Migrant Ministry, New York Immigration Coalition, Hispanic Federation, and Intervenors Nos. 1-4 filed a motion to intervene as defendants "to ensure the ability to acquire a driver's license without fear of deportation is fully and vigorously defended." (Dkt. 42 at 9 (footnote omitted)). Those same parties filed a separate motion to proceed anonymously with respect to the individual proposed intervenors in the event the Court granted the motion to intervene. (Dkt. 43). On September 18, 2019, Plaintiff filed a memorandum in opposition to this motion to intervene (Dkt. 63), while Defendants submitted a letter indicating that they did not object to the motion (Dkt. 64). With the Court's permission (Dkt. 66), a reply memorandum was submitted in further support of this motion to intervene on September 27, 2019 (Dkt. 71).

---

[3] Mr. Warren also sent an email to the Court on October 4, 2019, attaching a letter request to supplement his motion to intervene with a proposed motion to dismiss. In the email, Mr. Warren indicated that he would be mailing the originals to the Clerk of Court. On October 7, 2019, in response to this email, Plaintiff filed a letter in opposition. (Dkt. 78). As of the signing of this Decision and Order, the letter request and supplement proposed by Mr. Warren have not been filed on the Court docket. Nonetheless, in resolving Mr. Warren's motion, the Court has considered Mr. Warren's proposed papers and they do not alter the Court's conclusions.

Then, on September 24, 2019, the New York State Conservative Party filed a motion to file an *amicus curiae* brief in support of Plaintiff. (Dkt. 67). Plaintiff filed a letter on September 25, 2019, indicating that he had no objection to this request. (Dkt. 68).

## II. <u>LEGAL STANDARDS</u>

### A. <u>Intervention as of Right</u>

The Second Circuit has explained:

> "[I]ntervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand," and that, "[i]n resolving the tension that exists between these dual concerns, the particular facts of each case are important, and prior decisions are not always reliable guides."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (second alteration in original) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994)). Federal Rule of Civil Procedure 24(a) provides for intervention as of right, requiring a court to grant a motion to intervene on a timely motion made by anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To be granted intervention as of right, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd*, 770 F.3d at 1057 (quotation and footnote omitted). "All four parts of the test must be satisfied to qualify for intervention

as of right." *Wash. Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990).

With respect to the second part of the test—an interest in the action:

> [F]or an interest to be cognizable under Rule 24, it must be direct, substantial, and legally protectable. In other words, [a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.

*Floyd*, 770 F.3d at 1060 (alteration in original) (quotations and footnotes omitted). In assessing a proposed intervenor's interest, a court should accept the allegations as pleaded and should not engage in an assessment concerning the underlying merits. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) ("An interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or factually weak."); *Oneida Indian Nation of Wis. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984) ("[E]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention[.]").

With respect to the fourth factor—adequate representation—"a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action." *Wash. Elec. Coop, Inc.*, 922 F.2d at 98; *see Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 834 F.2d 60, 61-62 (2d Cir. 1987) ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party."). "Where there is an identity of interest between a putative

intervenor and a party, adequate representation is assured." *Wash. Elec. Coop., Inc.*, 922 F.2d at 98. As explained by the Second Circuit:

> While the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective. Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action.

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001) (citations omitted). Examples of evidence sufficient to overcome the presumption of adequacy include "collusion, adversity of interest, nonfeasance, or incompetence." *Id.* at 180. Speculative concerns will not rebut the presumption of adequate representation. *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87-88 (D. Conn. 2014). For example, "[t]he mere possibility that a party may at some future time enter into a settlement cannot alone show inadequate representation." *Great Atl. & Pac. Tea Co. v. Town of East Hampton*, 178 F.R.D. 39, 44 (E.D.N.Y. 1998) (quotation omitted) (denying motion to intervene by organization that supported passage of town zoning ordinance, in litigation challenging constitutionality of ordinance).

Where the government is a party in the litigation and has the same ultimate objective as the proposed intervenor, the required showing of inadequate representation appears to be even more stringent. *New York v. U. S. Dep't of Health & Human Servs.*, 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL 3531960, at *4 (S.D.N.Y. Aug. 2, 2019) ("[T]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*. . . . [T]here is . . .

an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.") (first alteration added) (citations and quotations omitted). However, there appears to be some disagreement among the case law as to whether this more stringent showing applies where, as here, the government is a defendant as opposed to a plaintiff. *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 104 (E.D.N.Y. 1996) ("The role of the State in defending the constitutionality of the state statute herein is just as much in the sovereign interest of the State of New York as its role in bringing an enforcement action as a party plaintiff. The distinction argued by the intervenors with respect to prosecuting or defending is a superficial one. The important fact is that the State appears herein in its sovereign capacity to protect the health, safety, and welfare of its citizens by defending the constitutionality of the State enactment which is the subject of this litigation."); *Herdman v. Town of Angelica*, 163 F.R.D. 180, 190 (W.D.N.Y. 1995) ("[I]n considering a motion to intervene as of right on the side of a government entity in an action in which the government entity is not suing as *parens patriae*, but rather is defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor.").

B. <u>Permissive Intervention</u>

A district court has the discretion to grant permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Permissive intervention may be granted where the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In analyzing this provision, "the words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Rubin*, 170 F.R.D. at 106 (quotation omitted).

A district court's discretion under Rule 24(b) is "very broad." *Id.* "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102 (D. Conn. 2007) ("Additional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether intervention will 'unduly delay' the adjudication." (quoting Wright & Miller § 1913 at 381-82)).

In addition to the requirements of Rule 24(a)(2), courts consider other factors in determining whether permissive intervention is appropriate, including:

> (1) whether the applicant will benefit by intervention, (2) the nature and extent of the intervenors' interests, (3) whether [the intervenors'] interests are adequately represented by the other parties, and (4) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Garfield*, 241 F.R.D. at 102 (alteration in original) (quotation omitted). Applying these principles, courts have reached varying conclusions as to whether individuals or entities

interested in litigation involving the constitutionality of a state statute should be permitted to intervene pursuant to Rule 24(b)(1)(B). *See, e.g., Grocery Mfrs. Ass'n v. Sorrell*, No. 5:14-cv-117, 2014 WL 12644264, at *5, *7 (D. Vt. Oct. 7, 2014) (denying motion to intervene in lawsuit challenging constitutionality of state statute by organizations that advocated for passage of the law, but allowing participation as *amici curiae*); *Garfield*, 241 F.R.D. at 103 (allowing permissive intervention in lawsuit challenging constitutionality of state statute); *Rubin*, 170 F.R.D. at 106-07 (denying intervention as of right, but permitting permissive intervention in lawsuit where constitutionality of state statute was at issue).

C. <u>*Amicus Curiae*</u>

*Amicus curiae* is Latin for "friend of the court"—not "friend of a party" as noted by Judge Posner in *Ryan v. Commodity Futures Trading Commission*, 125 F.3d 1062, 1063 (7th Cir. 1997). Yet, the role of *amicus curiae* typically is adversary in nature—taking one side or the other—as opposed to serving as a neutral assistant to the court. *Id.* "There is no governing standard, rule or statute prescrib[ing] the procedure for obtaining leave to file an *amicus brief* in the district court." *Lehman XS Tr., Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12 CIV. 7935 ALC, 2014 WL 265784, at *1 (S.D.N.Y. Jan. 23, 2014) (alteration in original) (quotation omitted). "District courts has broad discretion to permit or deny the appearance of amici curiae in a given case." *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992).

"The usual rationale for *amicus curiae* submissions is that they are of aid to the court and offer insights not available from the parties." *United States v. El–Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y. 1994). "Thus, when those purposes are not served, typically,

courts deny motions seeking leave to appear *amicus curiae*." *Onondaga Indian Nation v. New York*, No. 97-CV-445, 1997 WL 369389, at *2 (N.D.N.Y. June 25, 1997). As explained by the Seventh Circuit Court of Appeals:

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.

*Ryan*, 125 F.3d at 1063 (citations omitted).

### III. ANALYSIS

#### A. Motion by Rural and Migrant Ministry, New York Immigration Coalition, Hispanic Federation, and Intervenors Nos. 1-4

Plaintiff opposes the motion to intervene filed by the Rural and Migrant Ministry, New York Immigration Coalition, Hispanic Federal and Intervenors Nos. 1-4 (hereinafter collectively "RMM et al. proposed intervenors") on the grounds that the motion is technically deficient because it did not attach the required pleading as mandated by Rule 24(c) (Dkt. 63 at 5-6), any interests of the RMM et al. proposed intervenors are adequately represented by Defendants (*id.* at 6-9), the involvement of the RMM et al. proposed intervenors will unnecessarily delay this litigation (*id.* at 10-11), and permissive intervention is not appropriate (*id.* at 11-13). The Court specifically does not resolve the issue of whether the failure to attach a separate motion to dismiss is technically fatal to the motion of the RMM et al. proposed intervenors. Rather, the Court assumes that it is not for purposes of deciding the motion. Instead, because the interests of the RMM et al.

proposed intervenors are adequately represented by Defendants, and because the Court declines to allow permissive intervention, the Court denies the motion to intervene filed by the RMM et al. proposed intervenors. (Dkt. 42).

As an initial matter, the Court agrees with Plaintiff that some of the interests proffered by the RMM et al. proposed intervenors do not satisfy the second part of the criteria needed to grant intervention as of right because the interests are too remote or contingent, such as the organizations' claims that striking the Green Light Law will cause "increased cost and effort to serve immigrant communities," and that if the Court adopts Plaintiff's constitutional arguments it will put the organizations "at risk of potential prosecution for assisting these communities." (Dkt. 42 at 10). However, the individuals who comprise the RMM et al. proposed intervenors, through their declarations,[4] have plainly established a direct, substantial, and legally protectable interest in the action. Moreover, the organizations that comprise the RMM et al. proposed intervenors played critical roles in the passage of the Green Light Law, and the Court will assume for purposes of this motion that they also have the requisite interest. *See Rubin*, 170 F.R.D. at 102 ("Organizations may have sufficient interest to support intervention as a matter of right in actions involving legislation or regulations previously supported by the organization."); *cf.*

---

[4] The Court notes that the declarations submitted by these individuals (Dkt. 42 at 54-67) do not appear to contain signatures in compliance with the Western District of New York Administrative Procedures Guide § 2(G)(i). Because this could be related to the request to proceed anonymously, the Court will overlook this deficiency for purposes of this motion.

*Sorrell*, 2014 WL 12644264, at *4-5 (questioning but not resolving whether organizations that advocated for passage of legislation had sufficient interest).

However, the flaw in the motion to intervene as of right by the RMM et al. proposed intervenors is that their interests are adequately represented by Defendants. Here, while the motives of Defendants and the RMM et al. proposed intervenors may be different, their ultimate objective is the same—to ensure that the Green Light Law is not struck down. (*See* Dkt. 42 at 11 (RMM et al. proposed intervenors acknowledging that they "seek the same relief" as Defendants)). The concerns expressed by the RMM et al. proposed intervenors that "there is a distinct possibility that, at some point in this litigation, the State's interests in defending this action will diverge from the interests of undocumented immigrants like Intervenors" (Dkt. 42 at 30), and that the RMM et al. proposed intervenors need to be included in the litigation "in case the State moves away from defending their interests as immigrants in the privacy protections as the case develops" (*id.* at 31), are simply too speculative to establish a lack of adequate representation. To the contrary, Defendants have displayed a resolve to vigorously defend this lawsuit and the Green Light Law. (*See, e.g.*, Dkt. 64 ("Defendants are committed to a vigorous defense of the state law that is challenged in this case and believe that they will adequately represent the interests of the State's residents in doing so.")). Furthermore, in arguing that their interests are not adequately represented by Defendants, the RMM et al. proposed intervenors appear to conflate the second part of the test under Rule 24(a)(2) (showing an interest in the action) with the fourth part of the test (showing that the interest is not adequately protected). (*See* Dkt. 42 at 30). Just because Defendants' interests in defending this action may be different

than the RMM et al. proposed intervenors' interests does not mean that they will fail to adequately defend those other interests. The Second Circuit has made it clear that differing motives will not establish inadequate representation where, as here, the ultimate objective is the same. *See Wash. Elec. Coop, Inc.*, 922 F.2d at 98; *Nat. Res. Def. Council, Inc.*, 834 F.2d at 61-62. Thus, the Court concludes that the RMM et al. proposed intervenors are not entitled to intervention as of right because they have failed to satisfy all four parts of the test under Rule 24(a)(2).

With respect to permissive intervention, the Court recognizes that its discretion is broad, but it is concerned that allowing intervention by the RMM et al. proposed intervenors could open the floodgates to other requests for permissive intervention by similarly interested parties. In other words, "[w]ere this Court to grant this motion to intervene, it would be logic-bound to allow all . . . interested members of the public with differing viewpoints to intervene. . . ." *S.E.C. v. Bear, Stearns & Co. Inc.*, No. 03 Civ.2937 WHP, 2003 WL 22000340, at *4 (S.D.N.Y. Aug. 25, 2003). Given the significant interest of various third parties in this litigation, granting permissive intervention to the RMM et al. proposed intervenors would likely result in further requests for permissive intervention which may ultimately delay the litigation and present obstacles to its manageability. When viewed against the backdrop that the resolution of the pending motions will be driven by a legal analysis and application of the law—as opposed to the policy considerations advanced by the RMM et al. proposed intervenors in their motion papers—the Court is not persuaded that it should exercise its discretion and allow permissive intervention, at least at this stage of the litigation. This conclusion is only further buttressed by the fact that the

ultimate objective of the RMM et al. proposed intervenors is being vigorously and competently pursued by Defendants as represented by the New York State Attorney General and Solicitor General. In other words, the record is fully developed with the parties' submissions and the Court is poised to resolve the pending motions without the need for any further briefing.

As a result, the motion to intervene by the RMM et al. proposed intervenors (Dkt. 42) is denied without prejudice, and the motion to proceed anonymously (Dkt. 43) is denied as moot. The Court would have alternatively considered a request for these parties to submit an *amici curiae* brief, but no such alternative request was made and it is not the Court's role to grant relief that was not requested.

B. Motion by Mr. Warren

Mr. Warren seeks to intervene in this action citing his interest as a taxpayer in Erie County and the potential increased tax burden if "Defendant Schroeder decides to exercise his authority as Commissioner of the Department of Motor Vehicles to take over the operations Plaintiff currently performs with State Personnel thereby eliminating the revenue sharing currently enjoyed by the County of Erie and increasing the tax burden to be borne by the taxpayers of the County of Erie including Movant-Intervenor." (Dkt. 17-2 at 2). Mr. Warren contends that Defendants will not adequately represent his interests "as Movant-Intervenor and the State Defendants do not share the same interests." (*Id.* at 7). Alternatively, Mr. Warren requests that he be allowed to intervene by permission or granted *amicus curiae* status. (*Id.* at 7-8).

Both Plaintiff and Defendants oppose Mr. Warren's request to intervene, arguing that he has failed to establish a sufficient interest or lack of adequate representation so as to meet the criteria for intervention as of right. (Dkt. 30 at 4-6; Dkt. 31 at 1-2). The Court agrees. Mr. Warren's reliance on New York State Finance Law § 123-b[5] and General Municipal Law § 51 are misplaced—neither statute provides Mr. Warren with the right to intervene in this action. *See Godfrey v. Spano*, 13 N.Y.3d 358, 373-75 (2009); *Quigley v. Town of Ulster*, 66 A.D.3d 1295, 1297 (3d Dep't 2009). Mr. Warren's claim of an interest based upon the expressed concern that Plaintiff's handling of the Green Light Law could ultimately result in an increased tax burden is speculative and insufficient to meet the "direct, substantial and legally protectable" interest required by Rule 24(a)(2). *Floyd*, 770 F.3d at 1060 (quotation and footnote omitted); *see, e.g., Wash. Elec. Coop, Inc.*, 922 F.2d at 97 (proposed intervenor's interest was based upon a double contingency: first the plaintiff in the litigation would need to obtain judgment in its favor against the defendant, and then there would need to be a determination that ratepayers are entitled to a percentage of that recovery).

Even if Mr. Warren could establish a sufficient interest in the action, his ultimate objective is the same as Defendants—to ensure that the Green Light Law is upheld and Plaintiff's preliminary injunction motion is denied. While Mr. Warren's motives may be different than Defendants—in other words, Mr. Warren desires Plaintiff to comply with

---

[5] Mr. Warren's papers cite to New York Finance Law § 123, but that is the general provision allowing for taxpayer relief under certain circumstances, whereas § 123-b is the provision setting forth the actual remedies afforded a taxpayer.

the Green Light Law so that revenues are collected on behalf of Erie County—those different motives do not undermine the adequacy of the representation by Defendants. This conclusion is particularly the case where the State has demonstrated its commitment to vigorously defending the statute that Mr. Warren seeks to uphold.

With respect to Mr. Warren's alternative request for permissive intervention, the Court declines to exercise its discretion to grant the request. Mr. Warren seeks to interject collateral issues into this litigation—namely the tax burden that may be imposed on Erie County residents in the event that the Green Light Law is not enforced by Plaintiff. Not only does this collateral issue fail to advance the proper goals of intervention, *Wash. Elec. Coop, Inc.*, 922 F.2d at 97 ("Intervention cannot be used as a means to inject collateral issues into an existing action."), but allowing Mr. Warren to intervene and raise these issues would unnecessarily delay resolution of the litigation. Moreover, if the Court were to allow Mr. Warren to intervene, then theoretically every taxpayer within Erie County—and potentially every State taxpayer—would have a legitimate argument that he or she should be able to intervene. The Court will not tread onto that slippery slope.

Finally, the Court declines to grant Mr. Warren's request to appear as *amicus curiae*. While Mr. Warren appears able to navigate the legal issues involved in this litigation as a *pro se* party, the Court does not believe that Mr. Warren's briefing would facilitate or assist the Court in resolving the issues at play with the pending motions. Defendants have competently and adequately briefed much of the same issues with their motion to dismiss and opposition to Plaintiff's pending motion for a preliminary injunction, and to the extent

Mr. Warren seeks to interject other issues into the mix, this will only unnecessarily complicate the proceedings.

Accordingly, the Court denies Mr. Warren's motion to intervene or alternatively to be permitted to participate as *amicus curiae*. (Dkt. 17). As a result, his motion for electronic service (Dkt. 61) is denied as moot.

### C. Motion by Conservative Party

The New York State Conservative Party has filed an application to submit an *amicus curiae* brief. (Dkt. 67). The Court acknowledges that, notwithstanding its authority to demand a stringent test for status as *amicus curiae*, it has been somewhat flexible in allowing the submission of briefs from *amici curiae* to date (namely, from the Immigration Reform Law Institute (Dkt. 21), the State of Connecticut joined with seven additional states and the District of Columbia (Dkt. 35), and the NYCLU (Dkt. 54)). However, unlike the other entities that have been granted *amicus curiae* status, the New York State Conservative Party failed to comply with this Court's Order issued August 21, 2019, setting a deadline of September 6, 2019, for the filing of any requests for leave to submit an *amicus curiae* brief. (Dkt. 29). Not only did it miss the deadline by over two weeks, but it offered no explanation or justification for the failure to meet this Court's deadline—rather, it avoids any reference to the deadline in its submission. (*See* Dkt. 67).

Furthermore, the Court does not find the proposed *amicus curiae* brief from the New York State Conservative Party helpful, since it simply seems to repeat in a cursory fashion the more robust arguments already advanced by Plaintiff in this action. Additionally, the claim by the New York State Conservative Party that "twelve (12) separate amicus briefs"

(Dkt. 67 at 4) have been filed on behalf of Defendants is blatantly wrong—in fact, the Court has accepted only three *amicus curiae* briefs (including one from the State of Connecticut that was joined by seven other states and the District of Columbia, but those parties did not each submit their own brief). In any event, the Court is not going to decide this case based upon the number of parties supporting one position over the other.

Based on the foregoing, the Court denies the New York State Conservative Party's untimely request to file an *amicus curiae* brief. (Dkt. 67).

## IV. CONCLUSION

For the foregoing reasons, the motion of the Rural and Migrant Ministry, New York Immigration Coalition, Hispanic Federal and Intervenors Nos. 1-4 to intervene (Dkt. 42) is denied without prejudice, and their motion to proceed anonymously (Dkt. 43) is denied as moot; Mr. Warren's motion to intervene or alternatively to be permitted to participate as *amicus curiae* (Dkt. 17) is denied, and his motion for electronic service (Dkt. 61) is denied as moot; and the motion of the New York State Conservative Party to file an *amicus curiae* brief (Dkt. 67) is denied. The Clerk of Court is directed to remove all these parties and their counsel from the docket.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 9, 2019
Rochester, New York